Daniel E. SCHNEIDER, Plaintiff,

v.

H. A. SEARS et al., Defendants, [and nine other related actions].

66 Civ. 2823, 2839, 2898, 2937, 2945, 2971, 3075, 3165, 3183, and 3540.

United States District Court
S. D. New York.

March 14, 1967.

Lehrich and Lehrich, New York City, for plaintiff in Schneider 66 Civ. 2823, Hyman D. Lehrich, New York City, of counsel.

Carro, Spanbock & Londin, New York City, for plaintiff in Leber 66 Civ. 2839, Jerome J. Londin, New York City, of counsel.

Mordecai Rosenfeld, New York City, for plaintiff in Elster 66 Civ. 2898.

Stull & Stull, New York City, for plaintiff in Curtis 66 Civ. 2937.

Milberg & Levy, New York City, for plaintiff in Lattman 66 Civ. 2945.

Bennett Frankel, New York City, for plaintiff in Nagelberg 66 Civ. 2971.

Kramer, Bandler & Labaton, New York City, for plaintiff in Siegel 66 Civ. 3075, Sidney Kramer, Edward Labaton, New York City, of counsel.

Israel Beckhardt, New York City, for plaintiff in Miller 66 Civ. 3165.

Solomon D. Monshine, New York City, for plaintiff in Weingarten 66 Civ. 3183.

Ira Jay Sands, New York City, for plaintiffs in Messinger, Orlinsky, Bernstein and Harrison 66 Civ. 3540.

Kronish, Lieb, Shainswit, Weiner & Hellman, New York City, Reynolds, White, Allen & Cook, Houston, Tex., for defendant-movant Hall, Seymour Shainswit, New York City, Grant Cook, Houston, Tex., Peter J. Mansbach, New York City, of counsel.

Simpson Thacher & Bartlett, New York City, for trustee of defendant Westec Corp., John A. Guzzetta, New York City, of counsel.

Carter, Ledyard & Milburn, New York City, for defendant Francis I. duPont & Co.

Davis, Polk, Wardwell, Sunderland & Kiendl, New York City, for defendant Ernst & Ernst.

Roth, Carlson, Kwit & Spengler, New York City, for defendants Moore, Charrin, Wolf, Beeman, Gamel, Bock, Roedel, Stevens, Leigh and Belcher, Schneider, Bernet & Hickman, Inc., Robert S. Carlson, New York City, of counsel.

Shea, Gallop, Climenko & Gould, New York City, for defendant Williams.

I. Arnold Ross, New York City, for defendant Shirra.

Marshall, Bratter, Green, Allison & Tucker, New York City, Hogan & Hartson, Washington, D. C., for defendant Bull, David N. Webster, Washington, D. C., of counsel.

Silver, Saperstein, Barnett & Solomon, New York City, for defendant G. C. Haas & Co., David Saperstein, Isaac M. Barnett, Milton D. Solomon, New York City, of counsel.

Jacobs, Persinger & Parker, New York City, for defendant Ince, Irving Parker, Jay N. Feldman, New York City, of counsel.

Shearman & Sterling, New York City, for defendant Evans.

Beekman & Bogue, New York City, for defendant Paine, Webber, Jackson & Curtis.

Alexander & Green, New York City, for defendant A. G. Edwards & Son.

Debevoise, Plimpton, Lyons & Gates, New York City, for defendant Law.

Townley, Updike, Carter & Rodgers, New York City, for defendant Whitnell.

## OPINION

WEINFELD, District Judge.

These are motions under section 1404 (a) of Title 28 for a transfer to the Southern District of Texas, Houston Division, of ten separate actions commenced in this district [1] involving the affairs or transactions in the stock of the Westec Corporation, a Nevada corporation with its principal place of business in Houston, Texas, and now in a Chapter X Reorganization proceeding in the Southern District of Texas, Houston Division.

Ernest M. Hall, Westec's former president, a defendant in all actions, and whose activities in the stock of Westec are a principal subject of the various suits, moves for the transfer, which is opposed by some codefendants, but supported by others.

All ten actions are brought by stockholders of Westec and allege representative claims on behalf of other Westec holders similarly situated. Three of the complaints additionally alleged derivative claims on behalf of Westec. The gist of all the actions is that Hall and others in the highest levels of management, acting in concert with each other and with others, engaged in a fraudulent scheme to inflate artificially the price and value of Westec stock.

The representative claims alleged in all complaints are substantially similar. Two core claims, integral to the alleged scheme, are common to most of the actions. The first, alleged in all complaints, is that Hall, directly and through dummies, purchased, and lent his credit for the purchase of, large amounts of Westec stock, although without sufficient funds to pay therefor, for the purpose of creating the false appearance of legitimate market activity and artificially inflating the price of Westec stock on the American Stock Exchange (hereafter AMEX); that Hall concealed these purchases and failed to report them to AMEX or the SEC; that Hall's conduct was known to and participated or acquiesced in by the other individual defendants; that when this conduct became known or suspected there followed a flood of sell orders, in consequence of which trading in Westec stock on AMEX was suspended and the stock now has little or no value. Eight complaints allege the complicity of at least one stock brokerage firm, G. C. Haas & Co., in this program, and two of these draw in other brokerage firms, one complaint specifying seven such firms. The conduct of the various defendants in the alleged scheme is charged to violate the Securities Acts of 1933 and 1934, chiefly sec-

---

1. The motions for transfer were made in eight of the actions and the plaintiffs in the other two suits have agreed to be bound by the order to be entered herein.

tion 10(b) of the latter[2] and SEC Rule 10(b) (5) thereunder,[3] as a "manipulative or deceptive device or contrivance" employed in connection with the sale of stock on a national stock exchange, and section 9(a) (2) of the same Act,[4] as a "series of transactions in any security * * * creating actual or apparent active trading * * * for the purpose of inducing the purchase * * * of such security by others."

The second core claim, related to the first and alleged in nine of the complaints, is that Westec, with the knowledge and/or participation of the individual director and officer defendants, issued false and misleading financial reports, principally its annual report for 1965, which made it appear that the corporation's financial position and future prospects were better than in fact they were. Six of the complaints claim that Ernst & Ernst, the accounting firm which serviced Westec and certified the 1965 annual report, participated in this alleged fraud. And six complaints allege that Westec, with the knowledge or participation of the individual director and officer defendants, issued false and misleading news releases similarly distorting the financial status and potentiality of the corporation. The purpose of the dissemination of the false reports and press releases allegedly was to induce the purchase and inflate the price of Westec stock; and the conduct of the various defendants involved in the preparation and dissemination of this information is alleged to have violated provisions of the Securities Acts of 1933 and 1934, chiefly

section 10(b) of the latter, and Rule 10(b) (5) thereunder.

In addition to the ten actions in this district, three proceedings are pending in the Southern District of Texas, Houston Division, involving the same general subject matter, or centering about the affairs and property of Westec. On September 13, 1966, Westec filed an action for declaratory judgment against Hall and James W. Williams, former chairman of its Board, seeking an adjudication whether they violated any provisions of the Securities Acts of 1933 and 1934, and also an accounting under Texas law. Westec also filed a petition for reorganization under Chapter X of the Bankruptcy Act, which was approved by the District Court on September 27, 1966, and a Trustee was appointed. Later, on October 7, 1966, one Rasansky, a Westec stockholder, filed a representative action against Hall, Westec, and twenty-one other defendants, which in substance asserts the claims alleged in the actions pending in this district.

As already noted, three of the actions in this district allege derivative as well as representative claims. The derivative claims are Westec assets, and although the actions were commenced before the appointment of the Chapter X trustee, their enforcement rests with the trustee.[5] Whether he will seek substitution in the pending actions[6] or allow them to proceed but seek their transfer (which he does), or commence an independent suit against alleged recreant directors and officers, rests in his discre-

---

2. 15 U.S.C. § 78j(b).

3. 17 C.F.R. 240.10b–5.

4. 15 U.S.C. § 78i(a) (2).

5. See Meyer v. Fleming, 327 U.S. 161, 167–168, 66 S.Ct. 382, 90 L.Ed. 595 (1946); In re Ira Haupt & Co. (Knapp v. Seligson), 361 F.2d 164, 166 (2d Cir. 1966). See also Klebanow v. New York Produce Exch., 344 F.2d 294, 299 (2d Cir. 1965); Palmer v. Morris, 341 F.2d 577, 578 (5th Cir. 1965); Holtzoff, Entry of Additional Parties in a Civil Action, 31

F.R.D. 101, 103 (1962). Also, the "Order Approving Petition and Appointing Trustee" enjoins all stockholders and creditors "from commencing or continuing any action at law or suit or proceeding in equity against the debtor, its subsidiaries or the trustee or any of them or the agents of any of them."

6. Rule 25(c), Fed.R.Civ.P. See United States v. Transocean Air Lines, Inc., 356 F.2d 702, 704–705 (5th Cir. 1966). See also Holtzoff, Entry of Additional Parties, supra n. 5.

tion subject to Reorganization Court approval.[7] Obviously it would be more convenient to the Texas trustee and afford him greater flexibility if these actions proceeded in Texas. While the derivative claims have some bearing upon the transfer motions and the trustee's interest is a factor which weighs in favor of the transfer, it is not of controlling significance.

Far more important for the resolution of these section 1404(a) motions are the representative claims viewed in terms of the purposes of the statute. Section 1404(a) provides that:

> "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

Two basic issues are presented by a motion under this section: first, whether the actions sought to be transferred "might have been brought" in the proposed transferee forum;[8] and second, whether the convenience of parties and witnesses and the interest of justice would be best served by the transfer.

## WHERE THE ACTIONS MIGHT HAVE BEEN BROUGHT

Suits under the Securities Act of 1934[9] may be brought, as provided in section 27 of the Act,[10] in any district "wherein any act * * * constituting the violation" of the Act or any rule or regulation occurred. Under this section, it is sufficient to support the proposed transfer if any act in furtherance of the alleged scheme to induce the purchase and inflate the price of Westec stock occurred in Houston.[11]

None of the papers submitted on behalf of the various parties opposed to transfer asserts with respect to any of the ten actions that it could not have been brought in the proposed transferee forum. This issue was first raised upon the argument; thereafter movant Hall filed a supplemental memorandum addressed to this point, which was not responded to by any party.

It is clear that nine of the ten complaints rely on acts occurring in the proposed transferee forum in support of their claims under section 10(b) and Rule 10(b) (5).[12] These nine complaints allege the dissemination of allegedly false and misleading financial reports which, according to affidavits, were prepared and emanated from Houston, based upon Westec's books and records then and still maintained in that city. Six of these nine complaints allege the complicity of Ernst & Ernst, as Westec's accountant and auditor, in the preparation of these allegedly false reports. The affidavit submitted on behalf of Ernst & Ernst with respect to such allegedly false reports makes clear that substantially all accounting and auditing services in connection therewith were performed by the accountants in Houston. Three of these same six complaints, as

---

7. § 11(c) Bankruptcy Act, 11 U.S.C. § 29(c); Meyer v. Fleming, 327 U.S. 161, 171–172, 66 S.Ct. 382, 90 L.Ed. 595 (1946); In re Central Forging Co., 29 F.Supp. 975 (M.D.Pa.1939).

8. See Van Dusen v. Barrack, 376 U.S. 612, 616–626, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964); Continental Grain Co. v. Barge FBL–585, 364 U.S. 19, 80 S.Ct. 1470, 42 L.Ed. 1540 (1960); Hoffman v. Blaski, 363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960); 1 Moore, Federal Practice, ¶ 0.145 [6].

9. 15 U.S.C. § 78a et seq.

10. 15 U.S.C. § 78aa.

11. Hooper v. Mountain States Sec. Corp., 282 F.2d 195, 205 (5th Cir. 1960), cert. denied, 365 U.S. 814, 81 S.Ct. 695, 5 L.Ed. 2d 693 (1961); Errion v. Connell, 236 F. 2d 447, 455 (9th Cir. 1956); Kane v. Central American Mining & Oil, Inc., 235 F.Supp. 559, 565 (S.D.N.Y.1964); Dauphin Corp. v. Redwell Corp., 201 F. Supp. 466, 469–470 (D.Del.1962); Dauphin Corp. v. Davis, 201 F.Supp. 470, 472 (D.Del.1962); Thiele v. Shields, 131 F. Supp. 416, 420 (S.D.N.Y.1955); Coburn v. Warner, 110 F.Supp. 850, 851 (S.D. N.Y.1953).

12. Eight of the complaints expressly allege violations of § 10(b), and the two others broadly allege violations of the Securities Act of 1934, thereby necessarily including § 10(b).

well as two of the three which do not allege the complicity of Ernst & Ernst, claim Westec's acquisition program, conducted for the most part on the basis of exchanges of Westec stock for the assets and securities of acquired companies, as a motive and integral part of the alleged scheme. It appears from a number of the affidavits that many of the acts relating to these acquisitions occurred in Houston; for example, it was there that negotiations were carried on and the vast majority of meetings held of Westec's Board of Directors at which the acquisitions were approved. On the basis of these and other acts concededly occurring in Houston, the court finds that nine of the ten actions pending in this district might have been brought in the proposed transferee forum.

While the tenth complaint, Leber, does not specifically allege acts committed in Houston,[13] it is cast, with respect to the manipulative stock purchases claim, in the same general form as the other nine complaints. It alleges that Hall and other defendants used "the mail and other means and instrumentalities of interstate commerce" in connection with the alleged manipulative stock purchases. Since Hall, Westec and many other defendants were located in Houston, and since no other place, with the exception of New York has been shown to have had any meaningful connection with the acts complained of, it appears obvious that Houston was the point of origin or destination of some of the alleged interstate communications. The transmission or receipt of any interstate communication in the forum district supports venue under section 27 of the Act.[14] Further, the joint affidavit and brief submitted by Leber and three other plaintiffs leave no room for doubt that, as all other plaintiffs, he necessarily will rely in part upon acts committed in Houston to sustain his claims.[15] Thus, each of the actions in this district might have been brought in the transferee district,[16] and we reach

13. Vague pleading should not be permitted to serve as camouflage in avoidance of transfer; otherwise a party by means of his "'own acts or omissions" might prevent a fully warranted transfer. See Van Dusen v. Barrack, 376 U.S. 612, 623–624, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964). Cf. Connecticut Mut. Life Ins. Co. v. Shields, 131 F.Supp. 363, 364 (S.D.N.Y. 1954).

14. Matheson v. Armbrust, 284 F.2d 670 (9th Cir. 1960), cert. denied, 365 U.S. 870, 81 S.Ct. 904, 5 L.Ed.2d 860 (1961) (telephone calls from forum district); Hooper v. Mountain States Sec. Corp., 282 F.2d 195, 204–205 (5th Cir. 1960), cert. denied, 365 U.S. 814, 81 S.Ct. 695, 5 L.Ed.2d 693 (1961) (telephone call to forum district, and transmission of writing); United States v. Riedel, 126 F.2d 81, 83 (7th Cir. 1942) (mailing from forum district); Clapp v. Stearns & Co., 229 F.Supp. 305, 307 (S.D.N.Y. 1964) (telephone calls from forum district). And see generally Kane v. Central Am. Mining & Oil, Inc., 235 F.Supp. 559, 565 (S.D.N.Y.1964).

15. Leber alleges a claim under § 9(a) (2) of the Act, and as discussed, infra, p. 265, many of the acts required to prove this claim occurred in Houston.

16. While this court is satisfied that the Leber action might have been brought in Houston, even were the court not so convinced, since the convenience of parties and witnesses and the interest of justice require the other nine actions to be transferred, the Leber action would be stayed pending the determination of the actions in Texas. The same factors which the court finds support the transfer motion support the stay. See Landis v. North American Co., 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153 (1936); Telephonics Corp. & Fabrionics Corp. v. Lindly & Co., 291 F.2d 445, 447 (2d Cir. 1961); Mottolese v. Kaufman, 176 F.2d 301, 303 (2d Cir. 1949); Piedmont Shirt Co. v. Snap-Tab Corp., 236 F.Supp. 975, 977–978 (S.D.N.Y.1964); Polaroid Corp. v. Casselman, 213 F.Supp. 379, 381 (S.D. N.Y.1962). Moreover, Leber could not be prejudiced by a stay: he is in the class on whose behalf the other class actions have been brought; there are no allegations in his complaint which are not included in these other actions; there are no defendants named in his action who are not named in these other actions; and he would be free to present his individual claims for damage in the class actions in Houston pursuant to Rule 23 (c) (2) (C) of the Federal Rules of Civil Procedure.

the dispositive issue of whether the convenience of the parties, the witnesses and the interests of justice would be best served by the transfer of the actions.

## THE CONVENIENCE OF PARTIES AND WITNESSES AND THE INTERESTS OF JUSTICE

█ The court's discretion under section 1404(a) is broader than under the forum non conveniens doctrine,[17] but the criteria applicable under the statute are substantially those developed under the older doctrine. These include: (1) the convenience to parties; (2) the convenience of witnesses; (3) the relative ease of access to sources of proof; (4) the availability of process to compel attendance of unwilling witnesses; (5) the cost of obtaining willing witnesses; (6) the practical problems indicating where the case can be tried more expeditiously and inexpensively;[18] and (7) the interests of justice, a term broad enough to cover the particular circumstances of each case, which in sum indicate that the administration of justice will be advanced by a transfer.[19]

█ The burden is on the movant to make a clear showing that the proposed transferee district is a more convenient one, and that the interests of justice would be better served by a trial there.[20]

*The convenience of parties and witnesses.* Counsel for plaintiffs in five of the actions in this district favor transfer; the other five oppose. The plaintiffs opposing transfer assert that their convenience and their attorneys', too, would be best served by retaining the actions in this district. However, any testimony offered by these or other plaintiffs is likely to be minimal, probably no more than a recitation of the circumstances under which they purchased their stock. The critical evidence, testimonial and documentary, to sustain the claims must come from other sources. If the actions were transferred, and on the assumption that their testimony would be required at trial, the opposing plaintiffs would incur transportation and other expenses, but because of the limited nature of their testimony, no extended stay in any transferee district would necessarily be required. Further, these are class actions and any stockholder in the affected class who subsequently chooses to appear[21] might be faced with similar inconveniences, depending upon where the actions proceed. In this regard, it is relevant that a majority of Westec's stockholders reside in Texas. And it is of singular significance that five plaintiffs certify that a transfer would in no respect militate against the interests of the claims asserted in the complaint and that the rights of the security holders can be vindicated as readily in the transferee district as in this district; affirmatively these five plaintiffs state that "the most convenient and proper jurisdiction for the smooth functioning of the prosecution of the claims asserted on behalf of the stockholders, is in the * * * Southern District of Texas." Presumably their concern with the rights of shareholders is no less than that of the opposing plaintiffs.

There are thirty-nine defendants named in the ten actions in this district. The Cook affidavit states that of thirty-three defendants named in eight ac-

17. Norwood v. Kirkpatrick, 349 U.S. 29, 32, 75 S.Ct. 544, 99 L.Ed. 789 (1955).

18. See Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947); Oil & Gas Ventures—First 1958 Fund, Ltd. v. Kung, 250 F.Supp. 744, 754 (S.D.N.Y.1966).

19. Oil & Gas Ventures—First 1958 Fund, Ltd. v. Kung, 250 F.Supp. 744, 754 (S.D.N.Y.1966). Cf. Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 507–509 (1947); Chicago, R.I. & P.R.R. v. Igoe, 220 F.2d 299, 303 (7th Cir.), cert. denied, 350 U.S. 822, 76 S.Ct. 49, 100 L.Ed. 735 (1955).

20. Oil & Gas Ventures—First 1958 Fund, Ltd. v. Kung, 250 F.Supp. 744, 755 (S.D.N.Y.1966); Peyser v. General Motors Corp., 158 F.Supp. 526, 529 (S.D.N.Y. 1958).

21. See Rule 23(c) (2) (C), Fed.R.Civ.P.

tions,[22] only four of the individual defendants reside in or near this district; that the great majority reside in Houston; that all of the ten corporate and partnership defendants transact business in Houston; that eight of these maintain offices there. These statements are uncontested. The Carlson affidavit states, with greater specificity, that eight of the individual defendants reside in Houston, and two in Phoenix, Arizona. Eight of these are directors of Westec, and several of them are also either officers of Westec or its subsidiaries. Another is Comptroller of the corporation. In addition, defendant Hall is a resident of Houston; defendant Westec has its principal place of business and keeps its books and records in Houston; the trustee appointed by the Houston court is located in Houston; defendant Ernst & Ernst performed all accounting and auditing services for Westec at its Houston branch, with Houston personnel, and the records thereof are located in Houston; Francis I. duPont & Co., named as a defendant in the Curtis action, attests that all of its personnel and records connected with this action are located in Houston; Schneider, Bernet & Hickman, Inc., also named in Curtis, is located in Houston. At least these fourteen Houston-based defendants favor transfer. In contrast to the five plaintiffs opposing transfer, these defendants will be highly important sources of evidence, both testimonial and documentary. If the actions remain in this district, many of these defendants would be required to give rather extensive trial and pretrial testimony, entailing relatively lengthy stays in New York at heavy expense.

On the other side, three defendants, former directors of Westec, oppose transfer. One of these, Robert W. Bull, Jr., a New York resident, resists the transfer for reasons of health, and another, a Houston resident, on the ground that, "having been sued in this Court, I am prepared to defend such suits in this forum." The third, a New York resident, simply opposes. Defendant G. C. Haas & Co. attests that its sole office is in New York, and its books, records and personnel are located here. And defendant Richard W. Ince, former director of Westec and senior member of G. C. Haas & Co., also resists transfer on grounds of inconvenience and hardship.

■■ It may be acknowledged that some of these defendants opposing transfer, unlike the plaintiffs who make common ground with them on this issue, allegedly played a part in the acts and transactions which are the subject of attack, and so may reasonably be expected to prove important sources of documentary and testimonial evidence. Undoubtedly inconvenience will be visited upon the parties to a greater or lesser degree no matter where the suits are tried.[23] But the court is persuaded that the balance of convenience to parties is decidedly tipped in favor of Houston. A great majority of defendants who will be principal sources of evidence reside there, while a comparatively insignificant number reside in or near this district. While the ten plaintiffs are evenly divided on transfer, those who favor candidly concede, upon consideration, "it emerges quite clearly that the common denominator is Texas." The court agrees.

Not only the convenience of the great majority of the parties, but also the relative ease of access to sources of proof and the convenience of witnesses would be best served by transferring these actions to Houston. The proof under both the manipulative stock purchases and the dissemination of false and misleading information claims will no doubt come partly from New York and partly from

22. The Cook affidavit was filed before six additional defendants were named in a subsequently filed action.

23. Of course, the fact that some sources of evidence are in this district does not preclude transfer, but is merely a factor to be considered. A. Olinick & Sons v. Dempster Bros., 365 F.2d 439, 445 (2d Cir. 1966).

Houston, but the court is persuaded the greater part will come from the latter. Evidence in support of the first claim will probably come in the first instance from the records of AMEX to establish the dates of trades and the numbers of shares purchased and the identity of the member firms which handled the transactions. But no matter where the actions are tried, this evidence, in large measure of a documentary nature, will be obtained by deposition or other pretrial procedure. More important will be the records and personnel of the brokerage firms through which Hall dealt, chiefly G. C. Haas & Co. However, evidence from Houston sources, at least equally as important, will also be required, for as counsel for five plaintiffs state in support of transfer, "the proof with respect to manipulative practices will not be treated in a vacuum." The essence of the action is an alleged scheme conceived and executed by Westec's management in concert with others to enhance artificially the worth of the corporation's stock in order to enable acquisitions of other corporations by exchanges of inflated Westec stock. The evidence relevant to this grand scheme is clearly located in large part in Houston, where Westec's management is and was located, where minutes of Board meetings, inter-office memoranda, reports, statistical data, agreements and such are kept. Further, to recover under section 9(a) (2) of the Securities Act of 1934,[24] plaintiffs will have to prove that the purpose of the alleged stock purchases was to induce others to purchase Westec.[25] In this regard, evidence relating to the defendant's alleged

scheme to secure for Westec acquisitions of other corporations by exchanges of inflated Westec stock will certainly be highly material. The evidence relating to Westec's acquisition program, the timing of acquisitions in connection with Hall's purchases of stock on the market, the relative prices, exchange ratios and so forth, is largely in Texas.

Most, if not all, of the evidence on the second claim, false and misleading information, is obviously Houston-based. The proof on this claim will consist chiefly of testimony and records relating to the assets and properties of Westec, valuation reports, business transactions of Westec, the manner in which these transactions are reflected on its books, and the manner and accounting methods employed in their reporting. Hall lists seventy-four witnesses, classified by general categories, whom he plans to call upon the trial; seventy-one of these reside in Houston. Even on the assumption that some of this proposed testimony would be cumulative, or the number of witnesses exaggerated, as it probably is, it can hardly be disputed that the defense will require the testimony of numerous Houston-based witnesses [26] in connection with the business dealings, manner and methods of bookkeeping and accounting, the financial condition and forecasts at different times, acquisition programs and issuance of various public statements of Westec, and the personal business activities of Hall and other officers and directors.

Further, it is clear that numerous documents located in Houston will be required both at the pretrial and trial stages of these actions. Here, a special

---

24. 15 U.S.C. § 78i(a) (2), which makes it unlawful, "to effect, alone or with one or more persons, a series of transactions in any security registered on a national securities exchange creating actual or apparent active trading in such security or raising * * * the price of such security, for the purpose of inducing the purchase or sale of such security by others."

25. Thornton v. Securities and Exchange Commission, 171 F.2d 702, 703 (2d Cir.

1948); Pergament v. Frazer, 93 F.Supp. 13, 34–35 (E.D.Mich.1950), aff'd sub nom., Masterson v. Pergament, 203 F.2d 315, 329 (6th Cir.), cert. denied, 346 U.S. 832, 74 S.Ct. 33, 98 L.Ed. 355 (1953); Stella v. Kaiser, 82 F.Supp. 301, 309–310 (S.D.N.Y.1948); Securities & Exchange Commission v. Bennett, 62 F.Supp. 609, 610 (S.D.N.Y.1945).

26. Compare Axe-Houghton Fund A, Inc. v. Atlantic Research Corp., 227 F.Supp. 521, 523 (S.D.N.Y.1964).

factor militates in favor of transfer—the Texas trustee under the aegis of the Reorganization Court has jurisdiction and custody of all Westec's property, including its books and records.[27] These records will be required in that proceeding to unravel what appears to be the involved affairs of Westec, and under the circumstances authorization to remove such records is extremely doubtful. This would further complicate the otherwise sufficiently complex tasks relating to pretrial discovery and inspection and shipment of corporate records from Houston to New York. On the other hand, whatever documentary sources in New York will be required in the pretrial and trial stages of these actions are likely to be less voluminous than those in Houston, are unencumbered by any such special condition and, if need be, can readily be transported to Houston.

■ *The interests of justice; plaintiff's choice of forum.* A plaintiff's choice of forum is no longer entitled to the great weight given it under the doctrine of forum non conveniens, but is still a factor to be considered.[28] However, even under section 1404(a), the significance of a plaintiff's choice of forum is somewhat diminished in a class action, for, as the Supreme Court has stated:

" * * * [W]here there are hundreds of potential plaintiffs, * * * all of whom could with equal show of right go into their many home courts, the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened." [29]

This rationale, announced in connection with a derivative action, is applicable, albeit with somewhat less force,[30] to the instant class actions, each of which is brought on behalf of substantially the same class, the members of which are alleged to be so numerous and so scattered geographically as to make it impossible or impracticable to bring them all before this court.[31] The verity of this proposition that the bare fact of plaintiff's choice of forum is entitled to diminished weight in class actions such as these is strikingly attested to by the position of five of the plaintiffs herein, who, although having chosen this district as their forum, now feel that the proposed transferee forum is more appropriate.

*Involvement of this forum.* Similarly, this is not a case where the movant has delayed so long in bringing his transfer motion that the forum has already made a substantial commitment to the actions.[32] Except for the instant motions, which followed service of the complaints, no substantial activity has been undertaken in this district by the litigants.

■ *The pending Texas actions.* There is a strong policy favoring the liti-

27. See 11 U.S.C. § 511.

28. Norwood v. Kirkpatrick, 349 U.S. 29, 32, 75 S.Ct. 544, 99 L.Ed. 789 (1955); A. Olinick & Sons v. Dempster Bros., 365 F.2d 439, 444-445 (2d. Cir. 1966); Oil & Gas Ventures—First 1958 Fund, Ltd. v. Kung, 250 F.Supp. 744, 754 (S.D.N.Y. 1966).

29. Koster v. Lumbermens Mut. Cas. Co., 330 U.S. 518, 524, 67 S.Ct. 828, 832, 91 L.Ed. 1067 (1947); Freiman v. Texas Gulf Sulphur Co., 38 F.R.D. 336, 339 (N.D.Ill.1965); Josephson v. McGuire, 121 F.Supp. 83, 84-85 (D.Mass.1954), mandamus dismissed, 218 F.2d 174 (1st Cir. 1954).

30. A plaintiff in a representative action may have a more direct pecuniary interest than in a derivative suit, and indeed might even be the dominant shareholder. Cf. Altman v. Central of Georgia Ry., 363 F.2d 284 (D.C.Cir.), cert. denied, 385 U.S. 920, 87 S.Ct. 231, 17 L.Ed.2d 144 (1966), reversing, 254 F.Supp. 167 (D.D.C.1965). But compare Freiman v. Texas Gulf Sulphur Co., 38 F.R.D. 336, 339 (N.D.Ill.1965).

31. A majority of Westec's stockholders reside in Texas.

32. Compare Levenson v. Little, 81 F.Supp. 513 (S.D.N.Y.1949) (motion made after action pending one year); Brainard v. Atchison, T. & S. F. Ry., 81 F.Supp. 211 (N.D.Ill.1948) (motion made one week before trial).

gation of related claims in the same tribunal[33] in order that: (1) pretrial discovery can be conducted more efficiently; (2) the witnesses can be saved time and money, both with respect to pretrial and trial proceedings; (3) duplicitous litigation can be avoided, thereby eliminating unnecessary expense to the parties and at the time time serving the public interest; (4) inconsistent results can be avoided.

Here there are three actions pending in the proposed transferee forum: the Chapter X proceeding; Westec's action for declaratory judgment and an accounting; and the Rasansky representative action. As has been previously mentioned, many of the books and records crucial to the actions in this district are now subject to the exclusive jurisdiction of the Reorganization Court. Were these actions transferred to Houston, pretrial discovery could be better coordinated with the requirements of that court and the needs of the trustee, and the possibility of a conflict with respect to the need for documents between the efficient operation of that proceeding and an efficient trial in this forum could be avoided.

 Further, the evidence in Westec's suit—now in the hands of the trustee—against Hall and Williams for declaratory judgment and an accounting necessarily closely parallels the evidence in the actions pending in this district. And the Rasansky suit is in substance identical to these actions which, if transferred, will permit interested parties to move for consolidation of all suits and for designation by the court of lead counsel.[34] In view of the pendency of the Texas actions, it is clear, as counsel for the consenting plaintiffs states, that "the retention by the Court of jurisdiction of the actions pending here would result in wasteful and unnecessary duplication."

 *Calendar conditions.* The relative calendar conditions in the Southern District of New York and the Southern District of Texas, Houston Division, a factor which the court may take into account "as an important factor" on a motion to transfer,[35] clearly support the motion. It will take approximately two years to reach the trial calendar in this district, and nine months in the proposed transferee district.[36]

Taking into consideration all the relevant factors, the court concludes that the convenience of parties and witnesses and the interests of justice would be best served by transferring these actions to the Southern District of Texas, Houston Division.

 With respect to the contentions of the defendants opposing transfer that the taking of their depositions in Texas would be burdensome, such claims can readily be presented to the transferee court for appropriate relief under Rule 30(b) and, if health conditions justify, the depositions may, under Rule 26(d) (3) (3), be read upon the trial in lieu of personal testimony.[37]

---

33. Freiman v. Texas Gulf Sulphur Co., 38 F.R.D. 336 (N.D.Ill.1965); Axe-Houghton Fund A, Inc. v. Atlantic Research Corp., 227 F.Supp. 521, 523 (S.D.N.Y. 1964); Rodgers v. Northwest Airlines, Inc., 202 F.Supp. 309, 312 (S.D.N.Y. 1962); Cressman v. United Air Lines, 158 F.Supp. 404, 407 (S.D.N.Y.1958).

34. See Rule 42(a), Fed.R.Civ.P.; Hawkins v. General Controls Corp., 225 F.Supp. 971, 972 (S.D.N.Y.1964); Winsor v. United Air Lines, 153 F.Supp. 244, 247 (S.D.N.Y.1957). Cf. Weiss v. Doyle, 178 F.Supp. 566 (S.D.N.Y.1959).

35. Parsons v. Chesapeake & O. Ry., 375 U.S. 71, 73, 84 S.Ct. 185, 71 L.Ed.2d 137 (1963). Accord, A. Olinick & Sons v. Dempster Bros., 365 F.2d 439, 445 (2d Cir. 1966); Axe-Houghton Fund A, Inc. v. Atlantic Research Corp., 227 F.Supp. 521, 523–524 (S.D.N.Y.1964).

36. See The Annual Report of the Director of the Administrative Office of the United States Courts for the Fiscal Year Ending June 30, 1966, Table C 10.

37. See Sher v. Johnston, 216 F.Supp. 123, 124 (S.D.N.Y.1963).