**HENRY I. SIEGEL CO., Inc.**

v.

**KORATRON COMPANY, Inc.**

No. 68 Civ. 3496.

United States District Court,
S. D. New York.

April 28, 1970.

See also D. C., 302 F.Supp. 239.

Watson, Leavenworth, Kelton & Taggart, New York City, for plaintiff.

Davis, Polk & Wardwell, New York City, for defendant.

RYAN, District Judge.

Plaintiff SIEGEL moves for an order under Rule 65, enjoining defendant KORATRON from proceeding with arbitration in California under a demand dated September 23, 1968, and for a stay of all such proceedings until this suit and the issues pleaded in the complaint have been determined. Defendant moves for an order under 28 U.S.C. § 1404(a), transferring this action to the Northern District of California or, in the alternative, for an order staying its further prosecution pending determination of the

arbitration proceeding. Both motions were argued before the Court at the same time.

Defendant owns patents pertaining to a process for manufacturing what have come to be known in the market as "permanent press" garments. These garments are washable and retain their shape and crease without the need for ironing. Defendant's business includes the licensing of the use of its process and the trademark Koratron on garments manufactured under the process. Plaintiff, a garment manufacturer, became a licensee of Koratron on August 1, 1964, when a patent license agreement was executed by the parties.

Defendant has 365 licensees in the United States, of which 257 are garment makers licensed under the patents. The remainder are textile mills and other non-garment makers. Defendant states that the 257 garment manufacturer licensees are located in 33 of the 50 states, and that those manufacturing garments in New York account for only $9/10$ of 1% of the royalties received in 1967 from all garment manufacturers. Plaintiff asserts that, of such 365 licensees, 134 have offices in New York State and only 94 have offices west of the Mississippi, of which 26 are in California.

The license agreement (See complaint Ex. A., par. III(4)) provides for an audit of the records of the licensees as a check on the accuracy of royalty payments. Defendant contends that in early 1966 after plaintiff refused to permit an examination of many pertinent records, it concluded that there had been default in the payment of royalties and that, while extensive correspondence was going on, this action was commenced in August 1968.

The complaint, without putting in issue the validity of the patent, sets forth four causes of action. The first cause of action alleges that the license agreement with Koratron is a contract in restraint of trade in violation of the antitrust laws. Particularly, it alleges that the agreement violates the antitrust laws in that (1) plaintiff is required to purchase fabrics only from textile mills licensed by defendant; (2) plaintiff is required to refrain from contesting the validity of the patents; (3) plaintiff can not continue to use the patented process after termination of the license and patents; (4) plaintiff must extend its license beyond the life of one patent if it wishes to renew; (5) plaintiff is required by the license to assign to defendant any and all improvements in the licensed process developed by plaintiff's personnel; and (6) plaintiff is required to use the trademark Koratron on all garments manufactured under the patented process (Complaint, par. 14). The second cause of action alleges that Dan River Mills (Dan River) was relieved by defendant of the payment of royalties and thus can sell fabrics at a lower price, which has resulted in discrimination against plaintiff since it allegedly uses a smaller portion of the fabric manufactured by Dan River in its garments than those manufactured by other licensees (Complaint, pars. 16–22). The third cause of action alleges that Koratron has "conspired" and continues to "conspire" with Dan River to require Siegel and other garment manufacturers to purchase treated fabrics from Dan River in an attempt to monopolize the source of the unpatented product, the treated fabric (Complaint, pars. 23–27). The fourth cause of action alleges that Koratron has entered into agreements with textile mill licensees and garment manufacturer licensees other than plaintiff in which Koratron has agreed to forego the collection of all or a part of the royalties to which it would be entitled from Siegel. As a result of this alleged discriminatory discount, it is alleged that Siegel's ability to compete has been reduced (Complaint, pars. 28–32). Plaintiff seeks to recover treble damages for its alleged losses, the royalties paid by it, and judgment denying enforceability of the license agreement so long as the alleged antitrust violations continue.

The license agreement has the following arbitration provision (Par. XIII):

"Any controversies or claims arising out of or in connection with this agreement, or the breach thereof, except the issue of patent infringement, shall be determined by arbitration in San Francisco, California, or such other place as the parties hereto agree upon in accordance with the Rules then obtaining of the American Arbitration Association, and shall be determined by such Association." (Complaint, Ex. A)

In support of its motion, plaintiff argues that the charges of antitrust violations are not arbitrable. Defendant has stipulated that, if the present action is transferred to California, it will waive arbitration (Minutes of hearing, No. 1, 1968, pp. 3, 8).

Plaintiff's corporate offices are located in New York City, but its manufacturing distribution and sales facilities are located in other states, including California, Arizona, Illinois, Kentucky, Tennessee and Mississippi. It became licensed to transact business in the State of California on March 31, 1968, and presently maintains a place of business in Los Angeles, California.

Defendant is a California corporation with its principal place of business in San Francisco. It is not licensed to do business in any other state than California. It claims that its executive and administrative offices and its scientific, corporate and business records are located in San Francisco, California; that the vast bulk of its employees and all of its corporate officers and directors live in the San Francisco Bay area; that its research and development and all of its laboratories are in San Francisco; that all advertising and promotion are supervised from Koratron's San Francisco offices; and that the inventors of the patents are residents of the San Francisco Bay area.

At the time of the hearing, it appeared that there were pending actions in other jurisdictions involving the same issues. There were pending in the United States District Court for the Northern District of California, sitting in San Francisco, five actions (Winter, Amory, Metro, Haggar and Levi), of which the first three were instituted prior to the commencement of this action. These actions presented substantially the same antitrust issues as the present action, although the validity of the patents was also put in issue in the California actions. By order of the California Court dated November 19, 1968, four of the actions were "consolidated for all purposes", the order being without prejudice to any motion (a) under Rule 42(b) seeking separate trial of one or more issues, or (b) under Rule 42(a) seeking consolidation of other causes, or (c) under Rule 16, seeking pretrial determination of the order of presentation of proof at trial. There were also pending similar actions in Colorado (Bagly) and Kentucky (Cowden) and motions are pending in such Courts for the transfer of the actions to California. It also appears that, after the present action was commenced, an action was instituted in this Court and a motion is pending to transfer it to California (Blue Bell, Inc. v. Koratron, Co., Inc., 68 Civ. 4184).

We first address our attention to defendant's motion to transfer this case to the Northern District of California.

Section 1404(a), Title 28, United States Code, provides "(a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

Section 1404(a) replaced the former drastic remedy of dismissal under the doctrine of forum non conveniens with a less stringent remedy of transfer. While the relevant factors have not changed, the discretion which the Court may exercise under § 1404(a) is much broader (See Norwood v. Kirkpatrick,

349 U.S. 29, 32, 75 S.Ct. 544, 99 L.Ed. 789 (1955)).

The applicable criteria have been succinctly stated as follows: "(1) the convenience to parties; (2) the convenience of witnesses; (3) the relative ease of access to sources of proof; (4) the availability of process to compel attendance of unwilling witnesses; (5) the cost of obtaining willing witnesses; (6) the practical problems indicating where the case can be tried more expeditiously and inexpensively; and (7) the interests of justice, a term broad enough to cover the particular circumstances of each case, which in sum indicate that the administration of justice will be advanced by a transfer" (Schneider v. Sears, 265 F. Supp. 257, 263 (S.D.N.Y.1967, Judge Weinfeld).

While plaintiff is directly involved with one action pending in this District, defendant is faced with many actions or claims resulting from a great many licenses. The earliest actions were instituted in California and have been consolidated. Many of defendant's key witnesses will be common to all of the actions and obviously the convenience of defendant and also the witnesses would be served by trial in a single forum.

As for witnesses, whether representatives of the parties or third party witnesses, it is never easy to formulate in advance which witnesses are likely to be called. However even before considering the "flesh and blood witnesses", it is significant to note that plaintiff's contentions in good part rest upon questions of law. Thus, in its memorandum (p. 14), plaintiff urges that "on their face, such license agreements violate the anti-trust laws."

With respect to live witnesses, defendant contends that its executives, all located in San Francisco, will be called on to give extensive depositions or trial testimony concerning the facts surrounding the license agreement. Plaintiff contends that all of its officers, except two in Tennessee, reside here; that all of its

records are located here; that they will need evidence as to negotiations for the license, the fabric for and the manufacture and sale of the garments, and the 13 mills from whom the fabric is purchased, which for the most part have offices in New York. It should be noted, however, that, according to defendant, the mills referred to by plaintiff for the most part sell fabrics to the other garment manufacturer licensees involved in the other pending actions and that the testimony of their employees would be required also in the California cases; with the result that the failure to transfer to California would result in duplicative testimony by the very mills listed by plaintiff.

■ A factor to be considered is the number of necessary appearances if trial were had in different jurisdictions. (Rodgers v. Northwest Airlines, Inc., 202 F.Supp. 309, 313 (S.D.N.Y.1962); Freiman v. Texas Gulf Sulphur Co., 38 F.R.D. 336, 339 (N.D.Ill.1965); Kansas City Power & Light Co., v. I-T-E Circuit Breaker Co., 240 F.Supp. 121, 123 (W.D. Mo.)). Even where only one action is involved, the Courts have recognized the serious disruptive effect on a party's business where trial is to be had away from its headquarters (United States v. General Motors Corp., 183 F.Supp. 858, 861 (S.D.N.Y.1960); Axe-Houghton Fund A, Inc. v. Atlantic Research Corp., 227 F.Supp. 521, 523 (S.D.N.Y.1964)).

■■ I am satisfied that, under all the circumstances, even if the convenience of the parties or witnesses were the only factor, a trial in California would be more "convenient" within the contemplation of the statute. However, the convenience of parties and witnesses is not the sole factor and, even if it left doubt as to the propriety of removal, other factors might be sufficiently persuasive as to require removal (See Thomson and McKinnon v. Minynard, 291 F. Supp. 573 (S.D.N.Y. 1968).

The pendency of other actions in California, which have already been consoli-

dated, appears to be a most compelling reason for transfer. In the Schneider case, supra, the Court recognized that "there is a strong policy favoring the litigation of related claims from the same tribunal" (265 F.Supp. p. 266). In the Thomson case, supra, the Court recognized that even the pendency of one other action was an "important factor" (291 F.Supp. p. 577). The underlying reasons are succinctly stated in the Schneider case: "(1) pretrial discovery can be conducted more efficiently; (2) the witnesses can be saved time and money, both with respect to pretrial and trial proceedings; (3) duplicitous litigation can be avoided, thereby eliminating unnecessary expense to the parties and at the same time serving the public interest; (4) inconsistent results can be avoided" (265 F.Supp. p. 267).

There has been an increasingly strong policy in the Federal courts to avoid duplication of litigation and to try similar cases and issues together. These considerations underlie various related provisions of the Federal Rules of Civil Procedure, such as Rule 20(a) on permissive joinder, Rule 23(a) (3) on class actions, Rule 24(b) on permissive intervention, Rule 42(a) on consolidations, and the recently enacted statute dealing with multidistrict litigation, 28 U.S.C. § 1407.

Paragraph 13 of the license agreement provides that all controversies or claims, except the issue of patent infringement, shall be determined by arbitration in San Francisco, California. Assuming that the antitrust claims being asserted are not arbitrable, this does not alter the fact that the agreement of the parties on California as the forum for resolution of controversies in general is of significance as a recognition by the parties of a convenient forum.

Defendant urges that, in the California federal court, the case can normally be tried within 4 to 6 months after a party has certified that discovery has been completed. It appears most likely that the action would come to trial in California prior to trial in this District. The relative calendar conditions have been taken into account as "an important factor" on a motion to transfer (See Schneider, supra, 265 F.Supp. p. 267; Thomson, supra, 291 F.Supp. p. 577). An early trial of the present action seems to be particularly desirable since there are common issues applicable to a great many license agreements and defendant is already confronted with many lawsuits, and may be confronted with many more, involving substantially the same issues as the present action.

After considering all the relevant factors, I conclude that the convenience of parties and witnesses and the interest of justice would be best served by transferring this action to the United States District Court for the Northern District of California.

While this Court has power to sever the issues and transfer only such issues as involve the alleged antitrust violations, leaving for trial in this District any accounting as to the amount of liability for royalties (F.R.C.P. Rule 21, Vol. 3A Moore's Practice § 21.05, p. 2911; Leesona Corp. v. Cotwool Mfg. Corp., 308 F.2d 895 (C.A. 4th, 1962)), I believe that this would present needless delay and complications. If and when the liability to pay royalties is established, the accounting aspects should not present too serious a problem. Moreover, the license agreement itself recognizes that California is the proper place for the resolution of controversies. There is every indication that all the issues in the action can be most expeditiously and economically resolved in a single forum.

Defendant's motion to transfer the action to the District Court for the Northern District of California is granted. In view of defendant's stipulation to waive arbitration in the event of such transfer, plaintiff's motion to stay the arbitration proceedings in California is dismissed as moot.

So ordered.