Carol B. **BLANNING** et al.

v.

Laurence A. **TISCH** et al.

Civ. A. No. 74-61.

United States District Court,
E. D. Pennsylvania.

July 11, 1974.

Stuart H. Savett, Allen D. Black, Philadelphia, Pa., Herbert E. Milstein, Washington, D. C., for plaintiffs.

Irving R. Segal, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for defendant Tisch.

John J. Dautrich and Theodore W. Flowers, White & Williams, Philadelphia, Pa., for defendant Loews.

## OPINION

LUONGO, District Judge.

In this securities fraud case, defendants Laurence A. Tisch, Preston R. Tisch, Tisch Hotels, Inc., and Loews Corporation have moved, pursuant to F.R.Civ.P. 12(b) and 28 U.S.C. §§ 1404, 1406, to dismiss the complaint against them on grounds of improper venue, lack of personal jurisdiction, and insufficiency of service of process, and in the alternative, to transfer this action to the Southern District of New York.

Plaintiffs Blanning and Kohn are residents of Pennsylvania, and plaintiff Cohen is a resident of the District of Columbia. They are shareholders of Loews, a Delaware corporation which, through its subsidiaries, engages in the tobacco, hotel and motion picture businesses. Tisch Hotels, Inc. (THI) is a New Jersey corporation which operates mainly as a holding company. It has outstanding 1,500 shares of capital stock, all owned by Laurence and Peter Tisch. Before the events complained of in this action, THI held roughly 36% of Loews' stock. By virtue of that ownership, Laurence and Preston Tisch (hereinafter referred to jointly as Tisch) are in working control of Loews as well as THI. They serve as chairman of the board, chief executive officer and president of both companies.

On December 4, 1973, plaintiffs received from Loews proxy solicitation material seeking shareholder approval for a proposed merger with THI, to be accomplished by an exchange of Loews and THI common stock. Plaintiffs allege that the proxy material contained several crucial omissions of fact, notably that the value of the Loews stock far exceeded the value of the THI stock to be received in exchange; that the terms of the offer were dictated by Tisch, who stood to profit from it; and that a so-called independent committee which reported on the proposed exchange was really controlled and dominated by Tisch. The merger was approved at a meeting of Loews' stockholders on January 10, 1974. The merger, plaintiffs charge, is injurious to Loews and its shareholders but enormously profitable for Tisch. Plaintiffs allege violations of §§ 10(b) and 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§

78j(b) and 78n(a) and SEC rules 10b–5 and 14a–9 promulgated thereunder, and breach of fiduciary duty under state law.

Although defendants have moved to dismiss for lack of venue and improper service of process, both sides have directed the bulk of their arguments toward the question of whether the case should be transferred to the Southern District of New York. In stating their case for a transfer, defendants point out that they are New York residents; that Loews and THI are headquartered in New York and have their business records there; and that the individuals involved in working out the exchange offer and drawing up the proxy solicitation information, who would inevitably be witnesses at trial, also reside there. Additionally, they note that the proposed Loews-THI merger has given rise to another lawsuit in the United States District Court for the Southern District of New York, Jody v. Tisch, C.A. No. 74–356, and that this case should be transferred to New York to avoid duplicative litigation and the possibility of inconsistent results.

 Under 28 U.S.C. § 1404(a), a transfer may be ordered "[f]or the convenience of parties and witnesses, in the interest of justice . . . to any other district or division where it might have been brought." [1] Although the District Court has broad discretion to determine whether the circumstances of a particular case make a transfer advisable, Solomon v. Continental American Life Ins. Co., 472 F.2d 1043 (3d Cir. 1972), it is necessary that the court exercise its discretion in conformity with the criteria set forth in § 1404. If the Court decides to transfer a case, it should "specifically relat[ed] the evidence upon which it relies to the factors stated in 28 U.S.C. § 1404(a)." Plum Tree, Inc. v. Stockment, 488 F.2d 754, 756 (3d Cir. 1973).

The first question to be considered is whether "the convenience of parties and witnesses" requires transferring this case to New York. Defendants have asserted by affidavit that they and virtually all of the individuals who will be witnesses in this case reside either in New York City or its northern suburbs, such as Westchester County and Southern Connecticut. New York City would be a more convenient place for trial for them and would undoubtedly cause somewhat less disruption in their working schedules than litigating in Philadelphia would. Access to the relevant documents would also be facilitated by trying the case in New York, since all the documents are in the hands of New York City defendants. While a Philadelphia trial site would be more convenient to the Philadelphia plaintiffs, there are only two of them and, as representatives of a class, their role at trial is likely to be limited.

 Despite these considerations it is axiomatic in considering a transfer request that plaintiffs' choice of forum is entitled to great weight and is not to be disturbed unless the balance of convenience strongly favors the defendants' forum. Shutte v. Armco Steel Corp., 431 F.2d 22 (3d Cir. 1970), cert. denied, 401 U.S. 910, 91 S.Ct. 871, 27 L.Ed.2d 808 (1971). The burden placed upon Tisch and Loews to defend a lawsuit in Philadelphia is hardly onerous. The court takes judicial notice of the comparatively short distance and the rapid, efficient transit between Philadelphia and New York. These factors have prompted several courts to deny transfer motions from Philadelphia to New York. See, e. g., DeMoreas v. American Export Isbrandtsen, 289 F.Supp. 861 (E.D.Pa.1968); Internat'l Maritime Supplies Co. v. General Host Corp., 321 F.Supp. 392 (E.D.Pa.1969); cf. Zorn v. Anderson, 263 F.Supp. 745 (S.D.N.Y. 1966) (distance from Boston to New York held insufficient to justify trans-

---

1. It is undisputed that this action could properly have been brought in the Southern District of New York, the proposed transferee forum.

fer on grounds of convenience to Boston defendants). Moreover, the fact that the relevant documents are in New York City is hardly insurmountable. Plaintiffs' counsel have suggested that they would be willing to photocopy the relevant material. In the course of trial preparation, such a process is common even when all parties and the material documents are located in the same city. *Cf.* Herbst v. Able, 278 F.Supp. 664, 667 (S.D.N.Y.1967); Girsh v. Jepson, 355 F.Supp. 1104, 1107 (E.D.Pa.1973); Zorn v. Anderson, *supra,* 263 F.Supp. at 749.

▆▆▆ In sum, if only the convenience of parties and witnesses were at issue, I would deny the motion to transfer the action to New York. However, the pendency of what appears to be a related case in New York tilts the balance in the opposite direction. The complaint in Jody v. Tisch virtually tracks the complaint here in alleging violations of SEC rules 10b–5 and 14a–9 and breach of fiduciary duty.[2] Many courts have concluded that the presence of a related case in the transferee forum is a powerful reason to grant a change of venue. See, *e. g.* Schneider v. Sears, 265 F.Supp. 257 (S.D.N.Y.1967); Thomson & McKinnon v. Minyard, 291 F.Supp. 573 (E.D.Wis.1968); Henry I. Siegel Co. v. Koratron Co., 311 F.Supp. 697 (S.D.N.Y.1970); Maxlow v. Leighton, 325 F.Supp. 913 (E.D.Pa.1971); General State Authority of Pa. v. Aetna Cas. & Sur. Co., 314 F.Supp. 422 (S.D.N.Y.1970); Firmani v. Clarke, 325 F.Supp. 689 (D.Del.1971). The reasons were aptly summarized by Judge Weinfeld in Schneider v. Sears, *supra,* in the course of transferring ten actions involving the stock of Westec Inc. from New York to Houston, Texas, where other cases were pending:

> "There is a strong policy favoring the litigation of related claims in the same tribunal in order that: (1) pretrial discovery can be conducted more efficiently; (2) the witnesses can be saved time and money, both with respect to pretrial and trial proceedings; (3) duplicitous litigation can be avoided, thereby eliminating unnecessary expense to the parties and at the same time serving the public interest; (4) inconsistent results can be avoided." 265 F.Supp. at 266–267.

This reasoning is persuasive and consistent with the spirit of the Federal Rules of Civil Procedure. Similar considerations "underlie various related provisions of the Federal Rules . . ., such as Rule 20(a) on permissive joinder, Rule 23(a)(3) on class actions, Rule 24(b) on permissive intervention, Rule 42(a) on consolidations, and the . . . statute dealing with multidistrict litigation, 28 U.S.C. § 1407." *Henry I. Siegel Co., supra,* 311 F.Supp. at 701. The "interest of justice" for § 1404 purposes is "a term broad enough to cover the particular circumstances of each case, which in sum indicate that the administration of justice will be advanced by a transfer." *Schneider, supra,* 265 F.Supp. at 263. In light of the perpetually congested condition of the federal court dockets, the administration of justice will ordinarily not be served by permitting two virtually identical pieces of securities litigation to proceed 100 miles apart. Because the issues are so similar and because they arise out of the same transaction, there is a substantial likelihood that, if the two cases are in the same district, they will be consolidated.

Plaintiffs have asserted that the pendency of a related action is not a factor to be considered in a § 1404 transfer motion, but the only case cited for that proposition, Texas Gulf Sulphur Co. v. Ritter, 371 F.2d 145 (10th Cir. 1967), affords little support. In that case, the

---

2. Additionally, New York plaintiffs have alleged that the proposed merger constitutes an unlawful diversion of corporate opportunity by Tisch from Loews because Loews had embarked on a policy of buying up outstanding shares of its own stock where possible.

District Court denied defendants' transfer motion and decided to hear plaintiff's action for securities fraud in Utah, despite the fact that nearly 100 cases arising from the same factual background were pending in New York City. The Court of Appeals refused to issue either a writ of mandamus compelling the judge to transfer the case, or a writ of prohibition preventing him from hearing it. However, the appellate court's decision was clearly based on the fact that the writs requested were "drastic and extraordinary remedies," to be used against a trial court only on a "clear showing of abuse of discretion" where the right to such relief was "clear and undisputable." 371 F.2d at 146–147. The Court noted that the decision whether to transfer "lies within the sound judicial discretion of the trial judge." 371 F.2d at 147. In contrast to this action, the plaintiff in *Ritter*, a seventy year old Utah resident, was suing as an individual rather than derivatively or as a representative of a class, enhancing the weight to be given to his choice of forum. The cost and inconvenience to him of litigating in New York were obvious, particularly since his expert witnesses resided in Utah. Additionally, Texas Gulf Sulphur carried on extensive operations in Utah, reducing the unfairness to the company of having to defend a lawsuit there. It is quite clear from the opinion that the Court of Appeals for the Tenth Circuit regarded the pendency of related litigation in New York as an important factor to be considered. It concluded only that the district judge had not abused his discretion in deciding that other factors were of overriding importance, particularly where the alleged similarity between plaintiff's action and those pending in New York was asserted in conclusory fashion rather than by a detailed comparison of the substance of the complaints. 371 F.2d at 148.

Plaintiffs argue that justice would be disserved by transfer to New York because the *Jody* case presents thorny threshold legal questions which will cause "foreseeable difficulties and delay." In my view, plaintiffs' concerns are not well founded.

Plaintiffs' basic fear is that the New York plaintiffs may not have complied with F.R.C.P. 23.1. That rule provides in part that in a derivative action,

"The [shareholders'] complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for his failure to obtain the action or for not making the effort."

Philadelphia plaintiffs have made demand in writing upon Loews' directors, first to cease and desist from the proposed merger and accompanying proxy solicitation, and then to bring suit to remedy the conduct complained of, but Loews and its directors refused. (Instant Complaint, p. 15). New York plaintiffs did not make a demand upon Loews' directors, but alleged instead that it would be futile to do so because the Loews' board of directors approved the merger and was "controlled" by Tisch, making it impossible for them to represent the corporate interest. (New York Complaint, p. 27).

There will be a question, of course, whether New York plaintiffs have alleged with the requisite particularity reasons for believing that demand upon Loews' directors would have been futile. Some courts "have generally been lenient in excusing demand." deHaas v. Empire Petroleum Co., 435 F.2d 1223, 1228 (10th Cir. 1970), recognizing that where "directors and controlling shareholders are antagonistic, adversely interested, or involved in the transaction attacked, a demand on them is presumptively futile and need not be made." Cathedral Estates, Inc. v. Taft Realty Corp., 228 F.2d 85, 88 (2d Cir. 1955). On the other hand, the First Circuit recently applied Rule 23.1 stringently, re-

quiring the derivative plaintiffs to demonstrate clearly that "the antagonism between the directory and the corporate interest . . . [is] unmistakable." In re Kauffman Mutual Fund Actions, 479 F.2d 257, 263 (1st Cir. 1973), quoting Delaware & Hudson Co. v. Albany & Susquehanna R.R., 213 U.S. 435, 447 (1909). It will be for the New York court to determine whether the *Jody* complaint is deficient and, if it is, whether the deficiency may be cured by amendment. The hurdle, if it is one, does not appear insurmountable and indeed might actually be overcome by the instant action, if consolidation were to be granted.

Plaintiffs' other reservations about the New York lawsuit are even less substantial. They argue that New York local rules were violated by the *Jody* plaintiffs' failure to seek a class action determination within the requisite time period. But defendant's affidavit notes that Judge Brieant postponed for six months the time for filing of the class action motion to permit some discovery to take place first. Under these circumstances, New York plaintiffs' failure to comply with the local rules would seem to present small danger to their claim. Moreover, although plaintiffs complain that as of March 5, discovery had not yet begun to take place in *Jody*, significant progress has apparently occurred since that time. On February 28, New York plaintiffs filed an extensive request for production of documents. On April 26, defendants responded and are now in process of turning over many of the documents requested by plaintiff, while disputing plaintiff's right to others. Judge Brieant has already held two pretrial conferences (April 5 and April 30) in an attempt to expedite discovery and to move the case along, and a third is scheduled for July 12. (Blumstein Affidavit, pp. 1–3). Because discovery on the merits has been stayed in this case until the transfer motion is decided, McDonnell Douglas Corp. v. Polin, 429 F.2d 30 (3d Cir. 1970), there is very little, if any, advantage, from the standpoint of progress in discovery, in proceeding with the instant case.

As above noted, defendants moved pursuant to 28 U.S.C. § 1406 to dismiss this action for lack of venue. A comparatively small number of Loews' shareholders (1.3%) reside in this district and receive proxy solicitation materials here. There is no other connection between the action and this forum. Section 27 of the 1934 Act provides that in a civil action to "enforce any liability or duty created by this title . . .," venue is proper in any district "wherein any act or transaction constituting the violation occurred . . . ." This section has been interpreted to mean that "an act or transaction within the forum is sufficient for the purposes of venue if it represents 'more than an immaterial part of the allegedly illegal events.'" Bath Industries, Inc. v. Blot, 427 F.2d 97, 114 (7th Cir. 1970); Puma v. Marriott, 294 F.Supp. 1116, 1120 (D. Del.1969). While a proxy solicitation can constitute the single act needed to confer venue, Zorn v. Anderson, *supra*, it has been intimated that where the number of proxies solicited in the forum is relatively small, venue is not proper. *Puma, supra*; but *cf.* Hooper v. Mountain States Securities Corp., 282 F.2d 195 (5th Cir. 1960), cert. denied, 365 U.S. 814, 81 S.Ct. 695, 5 L.Ed.2d 693 (1961).

In dealing with a defect in venue, the District Court has the power to transfer a case to a district where it properly lies rather than dismiss the action altogether. 28 U.S.C. § 1406(a). Because of the pendency of the related case in New York, even if venue were clearly improper here, I would transfer the case rather than dismiss it. Because I would reach the same result whether or not venue is proper in this district, it is not necessary to decide the question. Nevertheless, the limited connection between the action and this forum does reinforce the decision to transfer this case.