**SWEETHEART PLASTICS, INC.,**
Plaintiff,

v.

**ILLINOIS TOOL WORKS, INC.,**
Defendant.

No. 66 Civil 2559.

United States District Court
S. D. New York.

May 3, 1967.

Graubard & Moskovitz, New York City, for plaintiff. Seymour Graubard, George Greenfield, Michael H. Greenberg, Edward M. Rosenfeld, New York City, of counsel.

Debevoise, Plimpton, Lyons & Gates, New York City, for defendant. Samuel E. Gates, J. Asa Rountree, Harvey J. Goldschmid, New York City, of counsel.

WEINFELD, District Judge.

Plaintiff, Sweetheart Plastics, Inc. ("Sweetheart Plastics"), commenced this action for a declaratory judgment decreeing the invalidity and noninfringement of two patents of nestable or stacking cups owned by the defendant used in the production of thin-wall thermoplastic containers. The same two patents are the subject of an infringement suit brought by the defendant in the United States District Court for the Northern District of Illinois against Maryland Cup Corporation ("Maryland Cup"), of which plaintiff is a wholly-owned subsidiary, and Sweetheart Cup Corporation ("Sweetheart Cup"), another wholly-owned subsidiary of the parent corporation.

The plaintiff here has moved (1) to add Maryland Cup and Sweetheart Cup as parties plaintiff, and (2) to restrain the prosecution by the defendant of the Illinois suit. The defendant moves under Rule 12(b) of the Federal Rules of Civil Procedure to dismiss the complaint on grounds of lack of personal jurisdiction and improper venue, or alternatively to transfer this action to the Northern District of Illinois.

■ It is desirable first to dispose of the defendant's motion to dismiss the complaint. Short shrift may be made of its claim of lack of personal jurisdiction. The facts, upon the defendant's own presentation, show that it is engaged in continuous, regular and systematic solicitation of business in this state and district and does a substantial volume of business therein through four salesmen who work under the supervision of a Regional Sales Director. The defendant ships a substantial quantity of its products into this state and maintains an "Eastern Regional Sales Office" at White Plains within this district, staffed full time by two clerical employees who there keep solicitation records for the defendant's entire Eastern Region which, starting at the Canadian border, covers the entire Eastern Seaboard to South Carolina. New York sales, including those made by independent distributors, amount to four million dollars annually—five per cent of the total sales volume of the defendant—which does not take into account additional shipments into the Eastern Region supervised through the New York office of the defendant. The defendant clearly is doing business within this district and is subject to this court's jurisdiction.[1]

■■ The holding that the defendant is amenable to jurisdiction also requires denial of its motion to dismiss for improper venue, since section 1391 of Title 28, which governs declaratory judgment actions as to the validity of patents,[2] permits such suits in any district where a corporation is "doing busi-

1. Compare, e. g., Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 445–449, 72 S.Ct. 413, 96 L.Ed. 485 (1952); International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L. Ed. 95 (1945); Bomze v. Nardis Sportswear, Inc., 165 F.2d 33 (2d Cir. 1948); Edwards v. Atlanta & W. P. R.R., 197 F.Supp. 686 (E.D.N.Y.1961); Glick v. Empire Box Corp., 119 F.Supp. 224 (S.D. N.Y.1954); Allegue v. Gulf & South American S.S. Co., 103 F.Supp. 34 (S.D. N.Y.1952). Defendant's reliance on Mac-Innes v. Fontainebleau Hotel Corp., 257 F.2d 832 (2d Cir. 1958), is misplaced. The determinative factor in that case was the nature of the defendant's business—a hotel. The court found that the hotel business was of an overwhelmingly local nature, and continued: "There can be no out-of-state delivery on orders taken outside of Florida. Thus the nature of the hotel business is quite different from such businesses in which traveling salesmen take orders for interstate delivery and use office space in other states as headquarters for their operations." Id. at 833–834.

2. Although a suit for patent infringement is controlled by the venue provision of 28 U.S.C. § 1400(b). Fourco Glass Co. v. Transmirra Prods. Corp., 353 U.S. 222, 77 S.Ct. 787, 1 L.Ed.2d 786 (1957), a

ness," and this term has the same meaning for venue as for jurisdictional purposes.[3]

■■ Defendant next urges that in any event the action should be transferred to the Northern District of Illinois pursuant to 28 U.S.C., section 1404 (a) "for the convenience of parties and witnesses, in the interest of justice." Its motion conveniently can be considered together with the plaintiff's motion to restrain the defendant from proceeding with its Illinois action, since the same factual considerations come into play and the criteria to be applied in determining each motion are the same.[4] The burden is upon the defendant to show that the proposed transferee district is a more convenient one and that the interests of justice will be better served by a trial there.[5] If the defendant does not sustain this burden on its transfer motion, then the Illinois action should be stayed, since this suit was commenced first and should have priority absent "factors of substance which support the exercise of the court's discretion that the balance of convenience

is in favor of proceeding first in another district."[6]

■ The respective suits by the parties were commenced under the following circumstances: After the defendant charged plaintiff with infringement, and following an exchange of correspondence, representatives of the parties met. What transpired at their conference is now in dispute. The defendant states it offered plaintiff a licensing arrangement similar to that in effect with other manufacturers, and that plaintiff said it would consider the proposal and advise the defendant of its decision, but instead "jumped the gun" and filed this suit on August 15, 1966. The plaintiff, on the other hand, contends it rejected the licensing proposal out of hand at the conference and thereafter commenced this action to vindicate its position and to protect its customers. Soon thereafter, on September 2, 1966, the defendant filed its Illinois action for infringement.[7] Whatever the true facts of the conference, it is clear that plaintiff "outraced"[8] the defendant to the courthouse, and in the circumstance

declaratory judgment action alleging patent invalidity and noninfringement is controlled by 28 U.S.C. § 1391(c). General Tire & Rubber Co. v. Watkins, 326 F.2d 926, 929 (4th Cir.), cert. denied, 377 U.S. 909, 84 S.Ct. 1166, 12 L.Ed.2d 179 (1964); Melton Corp. v. Dow Chem. Co., 182 F.Supp. 546, 547 (S.D.N.Y.1959); National Tool & Mfg. Co. v. Detroit Mold Eng'r Co., 182 F.Supp. 529, 531 (D.N.J. 1960).

3. See Industrial Waxes, Inc. v. International Rys. of Cent. America, 193 F.Supp. 783, 787, n. 10 (S.D.N.Y.1961); Champion Spark Plug Co. v. Karchmar, 180 F. Supp. 727, 731 (S.D.N.Y.1960); Satterfield v. Lehigh Valley R.R. Co., 128 F. Supp. 669, 671 (S.D.N.Y.1955).

4. See Landis v. North Am. Co., 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153 (1936); Telephonics Corp. & Fabrionics Corp. v. Lindly & Co., 291 F.2d 445, 447 (2d Cir. 1961); Mottolese v. Kaufman, 176 F.2d 301, 303 (2d Cir. 1949); Polaroid Corp. v. Casselman, 213 F.Supp. 379, 381 (S.D.N.Y.1962).

5. Oil & Gas Ventures—First 1958 Fund, Ltd. v. Kung, 250 F.Supp. 744, 755 (S.D.

N.Y.1966); Peyser v. General Motors Corp., 158 F.Supp. 526, 529 (S.D.N.Y. 1958).

6. Mattel, Inc. v. Louis Marx & Co., 353 F.2d 421, 424 (2d Cir. 1965), cert. denied, 384 U.S. 948, 86 S.Ct. 1475, 16 L. Ed.2d 546 (1966). See also Remington Prods. Corp. v. American Aerovap, Inc., 192 F.2d 872, 873 (2d Cir. 1951); Ronson Art Metal Works, Inc. v. Brown & Bigelow, Inc., 105 F.Supp. 169 (S.D. N.Y.), aff'd, 199 F.2d 760 (2d Cir. 1952).

7. The intercorporate relationship between plaintiff and related corporations is such that as a practical matter the parties to the lawsuits are the principal contenders as to the validity of the patents. The actions are not between a patentee and a bystander customer caught between the cross fire of conflicting claims. See Kerotest Mfg. Co. v. C–O Two Co., 342 U.S. 180, 186, 72 S.Ct. 219, 96 L.Ed. 200 (1952); Sundstrand Corp. v. American Brake Shoe Co., 315 F.2d 273 (7th Cir. 1963).

8. Cf. Caldwell-Clements, Inc. v. McGraw-Hill Pub. Co., 11 F.R.D. 156, 158 (S.D. N.Y.1951).

neither its priority in starting suit nor its choice of forum is entitled to determinative weight.[9]

The plaintiff, the manufacturer of the alleged infringing nestable cups, has its principal place of business at Wilmington, Massachusetts, where its plant, personnel and books are located. Wilmington, Massachusetts is near Boston.

The products manufactured by plaintiff are distributed in the East Coast area through its corporate parent, Maryland Cup, and in the Midwest through Sweetheart Cup, another subsidiary of Maryland. Maryland's principal office is in Baltimore, Maryland. Sweetheart Cup's principal place of business is in Chicago, Illinois. Neither Sweetheart Plastics, nor Maryland Cup or Sweetheart Cup, is registered or authorized to do business in this state. All are Maryland corporations.

It is beyond challenge that with the plaintiff and its related corporations all based outside of this district, whether the trial is conducted here or in Chicago, executive and key personnel whose testimony may be required at the trial or at pretrial will have to travel—whether from Wilmington, Massachusetts or Baltimore, Maryland; also that records and files of plaintiff will have to be transported from its home office in Massachusetts, and to the extent, if at all, any records of plaintiff's parent, Maryland Cup, may be relevant, from Baltimore. In addition, plaintiff's patent counsel has his office in Boston, and he, too, will be required to travel for trial or pretrial purposes. Thus, no matter where the site of the trial, New York or Chicago, the inconvenience visited upon plaintiff's personnel and the availability of its records is one of degree—one of more or less.[10] Chicago, a principal airport, is hardly less accessible than New York to plaintiff's offices and personnel residing in the Boston area, although, to be sure, air travel time is about one hour longer to the Chicago area.

Plaintiff, however, presses that this district, rather than the Illinois district, is the more convenient and appropriate forum. It lists eighteen potential witnesses. Six reside in or about Wilmington, Massachusetts; included in this group are plaintiff's President and Vice President, three designers and a sales manager, allegedly familiar with matters pertaining to the contested issues. As already noted, these six witnesses, in any event, will have to travel from Massachusetts no matter where the case is tried. Plaintiff, who itself has no direct contact in this district, to minimize this situation states that two other subsidiaries of its parent corporation—neither of them involved in this litigation—have warehouses in Brooklyn and Long Island, where inventories of plaintiff's products are maintained for distribution by Maryland; that plaintiff's top officials, presumably its President and Vice President, although not so stated specifically, are "regular commuters," often weekly, to this district to discuss design and market problems with the New York sales force of the parent corporation. As to the remaining four Wilmington, Massachusetts residents engaged principally in design activities, the record is obscure as to whether and how often they come into this district. Of the remaining twelve witnesses, one resides in Baltimore, and nine, employees not of the plaintiff but of Maryland Cup Corporation, reside in or nearby New York City. All are engaged in sales or service work. The relevance of their purported testimony to the

9. A plaintiff's choice of forum is no longer entitled to the great weight given it under the doctrine of forum non conveniens, and is simply a factor to be considered. Norwood v. Kirkpatrick, 349 U.S. 29, 32, 75 S.Ct. 544, 99 L.Ed. 789 (1955); A. Olinick & Sons v. Dempster Bros., 365 F.2d 439, 444–445 (2d Cir. 1966); Schneider v. Sears, 265 F.Supp. 257 (S.D.N.Y. 1967); Oil & Gas Ventures—First 1958 Fund, Ltd. v. Kung, 250 F.Supp. 744, 754 (S.D.N.Y.1966); Polaroid Corp. v. Casselman, 213 F.Supp. 379, 381 (S.D.N.Y. 1962).

10. See United States v. United States Steel Corp., 233 F.Supp. 154, 157 (S.D. N.Y.1964).

issues of patent invalidity or infringement does not clearly appear,[11] although a final affidavit states that, as experienced salesmen in paper and plastic containers, it is expected they "will * * be able to testify as to the extensive prior art in this field." In any event, should salesmen's testimony be required or relevant, since plaintiff's product is distributed in the Midwest through Sweetheart Cup, which has its principal office in Chicago, its salesmen would be as readily available to a Chicago court as the salesmen of the Eastern distributor are to this court.

Further, it is obvious that Sweetheart Cup requires the periodic presence of officials of plaintiff and its parent corporation in the Chicago area. Sweetheart Cup has at least three substantial plants or warehouses there. In September 1966 it acquired a two million square foot site in an expansion program. Clearly distribution activities and this recent development program indicate that plaintiff and Maryland Cup officials are also and will continue to be fairly "regular commuters" to the Chicago district.

The final two of the eighteen witnesses, residents of New York, are non-employees. Their prospective appearance at a trial as witnesses is somewhat equivocally stated. The plaintiff states they "are believed to have either been prior inventors or who have prior knowledge or have previously used or offered for sale the alleged invention covered by [defendant's] * * * patents in suit [and] may be called as witnesses for [plaintiff]."

While the court has referred to those listed by plaintiff as potential witnesses, that the testimony of all is relevant or required is doubtful. Both parties appear to have been overgenerous in their estimates of the number of witnesses likely to testify upon the trial—a not uncommon failing on motions of this type.[12]

On the defendant's side the following considerations appear. Its principal place of business is in Chicago; its division which developed and presently uses the challenged patents is located there. All potential witnesses, who include the inventor of the patents, company executives and other personnel familiar with matters in issue, patent experts and patent counsel, reside or work in the Chicago area. The substance of the testimony of each witness has been stated and appears relevant to the issues. Trial counsel, who also represented the defendant in a case already tried involving one of the disputed patents (referred to hereafter) also reside and maintain offices there.

The documents, physical exhibits and specimens required for pretrial and discovery purposes, stated to run into the hundreds, part of which may be evidential upon the trial, are all located in Chicago. It is represented that some of these documents, which trace the development of the patents, are "one of a kind" and unique, which in the event of loss or damage are irreplaceable, and if subjected to extensive removal pose the threat of irreparable injury.

The court is persuaded that the facts preponderate in favor of the transfer of this action to the District Court for the Northern District of Illinois in terms of convenience of the parties and witnesses, availability of documents and ease of travel. Other factors give additional support to the transfer. Antecedent to either this or the defendant's related suit in Illinois, there was pending in the same Illinois District Court another action by the defendant against Con-

11. See Chicago, R. I. & P. R. R. v. Hugh Breeding, Inc., 232 F.2d 584, 588 (10th Cir. 1956); Development Co. of America v. Insurance Co. of North America, 249 F.Supp. 117, 118–119 (D.Md.1966); Coffill v. Atlantic Coast Line R.R., 180 F. Supp. 105, 107 (E.D.N.Y.1960); Strypek v. Schreyer, 118 F.Supp. 918 (S.D.N.Y. 1954).

12. See, e.g., Schneider v. Sears, 265 F. Supp. 257 (S.D.N.Y.1967); Axe-Houghton Fund A, Inc. v. Atlantic Research Corp., 227 F.Supp. 521, 523 (S.D.N.Y. 1964).

tinental Can Company, Inc., charging infringement of one of two patents involved in this case. At the time of the commencement of this action the Continental Can Company suit was set for trial in October 1966, and has been tried but not yet decided. When the defendant's infringement action against Maryland Cup and Sweetheart Cup was filed,[13] it was referred for all purposes to the same judge to whom the Continental Can case had been assigned as a "related case" under the local district rules.[14]

If this action were transferred, it would be assigned to this same judge.[15] He is already familiar with at least one of the patents involved in the instant litigation, the prior art and generally with the thin-wall thermoplastic container field. The actions on appropriate motion can be consolidated.[16]

Also, it appears that the Chicago forum will afford a speedier disposition of the actions.[17] The median time interval from issue to trial for non-jury trials in this district is thirty-four months and in the Northern Illinois district, thirteen months.[18] In totality, upon all the facts, it appears that the effective administration of justice will be advanced by a transfer.

The defendant's motion to dismiss the complaint herein for lack of personal jurisdiction and improper venue is denied; its motion for a transfer pursuant to section 1404(a) of Title 28 is granted. The plaintiff's motion to add Maryland Cup Corporation and Sweetheart Cup Corporation, which is unopposed, is granted; its motion to restrain the defendant from proceeding with its action now pending in the Northern District of Illinois is denied; its further motion that the defendant appear for examination on the subject of its doing business in this district is denied, since it is now moot.

Settle order on notice.

13. A motion by Maryland Cup to dismiss for lack of jurisdiction is pending in the Illinois action.

14. Rule 10(B) (5) of the Northern District of Illinois.

15. Cf. Schneider v. Sears, 265 F.Supp. 257 (S.D.N.Y.1967); Freiman v. Texas Gulf Sulphur Co., 38 F.R.D. 336 (N.D.Ill. 1965); Axe-Houghton Fund A, Inc. v. Atlantic Research Corp., 227 F.Supp. 521, 523 (S.D.N.Y.1964).

16. See Schneider v. Sears, 265 F.Supp. 257 (S.D.N.Y.1967); Hawkins v. General Controls Corp., 225 F.Supp. 971, 972 (S.D.N.Y.1964); Winsor v. United Air Lines, 153 F.Supp. 244, 247 (S.D.N.Y. 1957).

17. See Parsons v. Chesapeake & O. Ry., 375 U.S. 71, 73, 84 S.Ct. 185, 11 L.Ed.2d 137 (1963); A. Olinick & Sons v. Dempster Bros., 365 F.2d 439, 445 (2d Cir. 1966).

18. See The Annual Report of the Director of the Administrative Office of the United States Courts for the Fiscal Year Ending June 30, 1966, Table C 10.