**Frederick MAYER, as Executor of The Estate of Adolf Mayer, Deceased, et al., Plaintiffs,**

**v.**

**BRANIFF AIRWAYS, INCORPORATED and British Aircraft Corporation, also known as British Aircraft Corporation, Ltd., Defendants.**

**No. 66 C 2164.**

United States District Court,
N. D. Illinois, E. D.

Feb. 9, 1970.

John J. Kennelly, Chicago, Ill., for plaintiffs.

Gordon R. Close, Lord, Bissell & Brook, Chicago, Ill., for defendant Braniff Airways.

William H. Schrader, Heineke, Conklin & Schrader, Chicago, Ill., for defendant, British Aircraft Corporation.

## MEMORANDUM AND ORDER

CAMPBELL, Chief Judge.

These consolidated actions, totaling seventeen claims, arose out of a crash of a Braniff Airways, Inc., ("Braniff") flight near Falls City, Nebraska, on August 6, 1966. The aircraft was manufactured by British Aircraft Corporation Ltd. ("BAC"). All thirty-eight passengers and four crew members aboard the aircraft were killed in the crash. The first of these cases were filed in Illinois State Court but were removed to this court pursuant to 28 U.S. C. § 1441. The removal petition in the first or lowest numbered case, Mayer v. Braniff Airways, Inc., et al. was filed in this court on November 25, 1966. Claims of the families of seventeen passengers were eventually brought to this court. Other passenger cases were eventually filed in the United States District Court for the Southern District of New York (14 cases); The District Court for the District of Columbia (1 case); and the Texas State Court (3 cases). Three crew member cases were filed in the United States District Court for the District of Nebraska. (These same three crew cases were also filed in the United States District Court for the Northern District of Texas.) The cases filed in this court were originally assigned to the calendar of Judge William J. Lynch who heard numerous contested motions relating to the jurisdiction of the court over the person of defendant, BAC.

Judge Lynch properly denied the motion to dismiss for lack of jurisdiction (September 26, 1967).

BAC then obtained additional extensions of time and did not file its answer until November 7, 1967. Shortly thereafter (on November 21, 1967), BAC filed a motion to transfer these cases pursuant to 28 U.S.C. § 1404(a) to the Southern District of New York. A briefing schedule was then set on the motion to transfer. All plaintiffs and defendant Braniff opposed the motion to transfer. On January 4, 1968 before the briefing schedule was completed, these cases, along with a number of others, were assigned to my calendar by the Executive Committee of this court. At that time the parties were in the process of briefing the issues relating to BAC's motion to transfer pursuant to § 1404(a).

Plaintiffs also filed a counter-motion to transfer all cases pending in other districts to this district.

The motion of plaintiffs to transfer all cases pending in other districts to this district was denied as a motion to transfer under § 1404(a) can only be presented in the district in which the cause is pending. The motion was referred to the Judicial Panel on Multidistrict Litigation, to consider whether the cases should be consolidated for

*pretrial discovery* purposes under the authority of that panel. (Now, 28 U.S.C. § 1407.) The motion of defendant BAC to transfer the cases pending in this district to the Southern District of New York pursuant to 28 U.S.C. § 1404(a) was likewise denied as I found that this court first acquired jurisdiction over the subject matter of this litigation; that this court was the closer of the courts to the scene of the accident; and that the greatest number of cases were pending in this district (at that time only eight were pending in the Southern District of New York).

■ In denying the motion to transfer, I was also mindful of the fact that most of the plaintiffs were residents of the Midwest and in selecting Chicago they chose a forum which was most convenient to them. Plaintiffs' choice of forum should rarely be disturbed. Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 67 S. Ct. 839, 91 L.Ed. 1055 (1947). Furthermore most of the witnesses were deposition witnesses who would refer to and identify documents, who would not be called at trial, and who could be deposed most conveniently at their place of employment, generally London (BAC) and Dallas (Braniff). Of those who would have to appear, and for counsel and other participants, Chicago seemed most convenient and accessible. In measuring the trip from London, it is not much more inconvenient than New York or Washington, D. C., and is more convenient than Dallas. Insofar as Braniff is concerned, Chicago is convenient to Dallas and is a principal point of Braniff's operations.

Beyond these factors, however, was the important consideration of the status of our docket as compared with that of the Southern District of New York. This district is, of course, the only major multi-judge court in a commercial center appropriate for litigation of these cases that has a current docket. The average civil case proceeds from issue to disposition in twelve months. (Annual Report, Administrative Office of the United States Courts, 1969, table 10–C.)

The same considerations discussed above were recently applied in Everprest, Inc. v. Phillips-Van Heusen Corp., 300 F.Supp. 757 (M.D.Ala.1969), a patent infringement action brought in Alabama by a Utah corporation and against a New York corporation. In denying the defendant New York corporation's motion to transfer pursuant to 28 U.S. C., § 1404(a) to the Southern District of New York, the court first found that most of the witnesses (most of whom were located in the New York area) were either experts, for whom travel and expenses are customary, or employees of defendant, whose convenience is treated as virtually identical with that of the party.

The court then took judicial notice of the fact, "that the action is likely to be disposed of several years earlier in this district than it would be in the heavily burdened Southern District of New York." (300 F.Supp. at 758.) It then concluded that the interests asserted by defendants (that its witnesses and most necessary documents were located in New York—circumstances not present in this case) were at least counterbalanced by plaintiffs' interest in a speedy disposition of the action which was more likely to occur in that district than the Southern District of New York.

On the other hand, it would appear that a motion to transfer the New York cases to this district under § 1404(a) would have been granted, were such a motion presented to that court. This case is similar to Sweetheart Plastics, Inc. v. Illinois Tool Works, Inc., 267 F. Supp. 938 (S.D.N.Y.1967), where a motion to transfer to this district was granted, the court noting that this district was convenient and accessible for all eastern witnesses as well as for Chicago area witnesses; and that under our local rules (Rule 10B(5) of the Northern District of Illinois) the case, upon transfer, could be heard by the same judge before whom a "related case" was pending and who was familiar with the issues. See also, Rodgers v. Northwest Airlines Inc., 202 F.Supp. 309 (S.D.N.

Y.1962). The court in *Sweetheart Plastics, Inc.* stressed that the Chicago forum would provide a speedier disposition. As to this consideration the court noted: "The median time interval from issue to trial for non jury trials in this district is thirty-four months and in the Northern District of Illinois thirteen months" (267 F.Supp. at 944, citing the Annual Report of the Director of the Administrative Office of the United States Courts for the Fiscal Year Ending June 30, 1966). I should point out that the most recent reports of the Administrative Office (June 30, 1969) indicate that the median time interval from issue to trial for non jury cases is thirty-five months in the Southern District of New York and eleven months in this district, and for jury cases, thirty-two months in the Southern District of New York and twelve months in this district. With all of these considerations in mind, and in the interests of justice, I agreed to accept transfer of all cases pending in other courts if it was the desire of the Panel on Multidistrict Litigation or of the courts wherein cases were pending to send those cases to this district. I urged counsel for plaintiffs and for defendants to advise the Panel on Multidistrict Litigation and the other courts of my willingness to accept the other cases in the interests of judicial economy and particularly in view of the New York Court's docket. The Panel on Multidistrict Litigation was so advised, but after consideration took no action. No motions to transfer pursuant to § 1404(a) were presented in other courts.

At a further pretrial conference held February 21, 1968, counsel discussed at length the discovery problems relating to this litigation. Upon conclusion of our discussions, and for the convenience of the defendants and their employees, I ordered that the depositions of all BAC employees were to be taken in London, England. New York counsel for BAC were directed to establish a deposition schedule for BAC employees and to see to it, to the extent possible, that each employee would be deposed only once. It was also hoped that our schedule could be worked out with the cases pending in other districts. Chicago counsel for Braniff were to arrange deposition schedules for Braniff witnesses in Dallas. These were to be completed immediately after the London depositions. I also directed all parties to appear at the place of deposition a few days before the depositions were scheduled so that they might completely review any and all documents that they required, thereby expediting the entire discovery schedule.

On September 9, 1968 plaintiffs' counsel stated that plaintiffs were ready for trial and needed no further discovery. Plaintiffs also advised the court that they intended to file a motion for summary judgment or for judgment on the pleadings as against defendant Braniff. (Said motion was filed September 16, 1968.) At this pretrial conference and at subsequent conferences both defendants expressed agreement that those plaintiffs representing the estates of passengers were entitled to recover as against one or both of the defendants. I thereupon in accordance with our Local Rule 21 (Civil Rules) separated the issue of liability from the issue of damages and directed that the parties meet and confer and agree on the value of each passenger case. Upon said agreement the defendants were asked to agree as to an appropriate percentage of contribution each should make to pay these claims, thus removing the plaintiffs from the litigation. All parties commendably agreed that the plaintiffs were entitled to recover and should not be made to wait for payment while the defendants determined which or perhaps both were liable. Both agreed that a proper resolution of the problem was for both to make some contribution.

The parties then conferred with each other and during October 1968 extensive conferences were again held with the court to reach fair settlement figures on the passenger cases. These conferences were successful and the parties reached agreement as to the value of the seventeen claims before this court. These

claims totaled $2,535,000. All parties agreed that these settlements were fair and just and agreed that the plaintiffs were entitled to recover against at least one of the defendants but were unable to agree as to the exact percentage each defendant should pay toward said settlement. Accordingly, under the broad authority of Rule 16 (Fed.R.Civ. Proc.) (see, e. g. Link v. Wabash Railroad Co., 291 F.2d 542 (7th Cir.1961); and Brinn v. Bull Insular Lines Inc., 28 F.R.D. 578 (E.D.Pa.1961)) and to aid in the disposition of this action, and in view of the fact that both defendants agreed they would contribute toward the settlement of plaintiffs' claim on a temporary basis while they litigated ultimate liability, I ordered that the total amount of the settlement, $2,535,000, be deposited one-half by each defendant into the Registry of the Court. Defendant Braniff was thus ordered to deposit forthwith $1,267,500 and the defendant BAC was likewise ordered to deposit forthwith $1,267,500. The Clerk of Court was ordered upon presentation of proper acquittances and releases approved by the defendants and by the court, to pay each of the plaintiffs and his attorneys the sum applicable to each individual case. It was further ordered that the cause should proceed to trial as to the remaining issue of liability as between the defendants and that if, upon the disposition by judgment on the issue of liability, a defendant was entitled to a return of some or all of its money theretofore deposited with the court, that defendant would receive from the other defendant the amount so deposited and in addition thereto interest at the legal rate. (Order Jan. 4, 1969.)

After disposition of the plaintiffs' claims further pretrial conferences were held with defendants in preparation for trial or disposition of the remaining liability issues as between defendants. I again reiterated my willingness to take all pending cases from all other courts on the liability issue, as it seemed contrary to sound judicial administration to have two (or more) courts preparing for trial in such a complex case when one trial in any district would undoubtedly resolve the issue, as any judgment as between these two parties would be *res judicata* insofar as the liability issue is concerned.

The matter was again referred to the Judicial Panel on Multidistrict Litigation. This time hearings were held but the Panel decided against transfer and consolidation largely because the passenger claims in the cases in this district had been settled. In fact the cross-claims between defendants were beyond the pretrial state and were overdue for trial, as trial was postponed only to enable the Panel to consider the question. In re Air Crash Disaster at Falls City, Nebraska on August 6, 1966, 298 F.Supp. 1323 (1969). Since the Panel has authority only to consolidate for pretrial discovery, these cases were not at that time proper subjects for its procedures. The cases pending in the Southern District of New York were still on the pretrial calendar and still in the discovery stages. Thus, the Panel properly denied the motions to transfer for *pretrial discovery* pursuant to 28 U.S.C. § 1407 (Multidistrict Litigation Act) but suggested that the cases could be transferred for all purposes pursuant to 28 U.S.C. § 1404(a) by the courts where they were pending. No such motions were made in any court and no other court initiated transfer *sua sponte.*

Since the date of that decision, I have repeatedly urged the parties here to proceed to trial. I also recommended that the case be tried to the court without a jury under the enlightened procedures recommended by the Judicial Conference and set forth in the Manual for Complex and Multidistrict Litigation. In this way voluminous documents can be less formally introduced into evidence and referred to as desired by the parties. Witnesses, particularly busy experts, may be heard at times suitable and convenient for counsel and the court. This procedure particularly lends itself to cases like these where schedules of trial counsel from various cities and sched-

ules of busy experts and top level scientific employees could be coordinated for the benefit of all concerned. We followed these procedures successfully and to the satisfaction of all in United States Gypsum Co. v. United States, 304 F.Supp. 627 (N.D.Ill.1969).

On October 30, 1969, almost a full year since the disposition of the passenger claims and having met only frustration in my attempts to dispose of this litigation I advised counsel that these cases, by this time the oldest pending in this district, were to proceed here immediately under the protracted litigation procedures or be transferred for the determination of liability as between the defendants to the Southern District of New York where the same issue was still pending in cases on the pretrial calendar and where a number of passenger claims were still unsettled. (At the date of this order, I am advised that claims of ten passengers are still unresolved, four cases having been settled, pursuant to the "equal contribution" formula initiated in this district.)

I also advised counsel that it would be acceptable and sensible—if we are to go ahead here, to transfer all other cases pending in any other district to this district for disposition with this case.

William H. Schrader, Esq. counsel for BAC, suggested and strongly recommended on behalf of his client that the case be presented to this court without a jury. Mr. Schrader further suggested that he and his client believe that this court is most familiar with the issues of the case due to the numerous and lengthy pretrial conferences which were held exploring both the liability and damage questions and that BAC would much prefer to proceed here, without a jury under the protracted case approach. He further suggested that this procedure would best serve the interests of all parties and the ends of justice.

I informed counsel for both parties to advise their clients that I would undertake trial and disposition of all these cases immediately if they were willing to proceed before the court without a jury under the Judicial Conference recommended procedures. On the other hand, if either party did not desire to proceed here or did not desire to proceed immediately, or if either party determined that it did not desire to proceed under the protracted litigation procedure outlined or would prefer trial by jury, I stated that the cases would be transferred to the Southern District of New York pursuant to 28 U.S.C. § 1404(a), for consolidation with the cases pending there, and which would then require trial anyway. Counsel for BAC immediately consented to thus proceed here and urged counsel for Braniff to do so.

On November 12, 1969 counsel for Braniff advised that their client was unwilling to proceed here as suggested by the court. Accordingly, and pursuant to 28 U.S.C. § 1404(a) I now reluctantly must find that the convenience of the parties and witnesses and particularly the interests of justice will best be served by transfer of these actions to the United States District Court for the Southern District of New York to await trial with the cases pending there.

It is so ordered.