## SECURITIES AND EXCHANGE COMMISSION v. BENNETT et al.

District Court, S. D. New York.
Aug. 20, 1945.

Louis Loss, of Philadelphia, Pa., Irving J. Galpeer and Gerald J. O'Brien, both of New York City, and Arden L. Andresen, of Philadelphia, Pa., for Securities and Exchange Commission.

William Biel, of New York City, for defendants.

BONDY, District Judge.

This is a motion for a preliminary injunction in an action brought by the Securities and Exchange Commission under the Securities Exchange Act, §§ 21(e) and 27, 15 U.S.C.A. §§ 78u(e), 78aa, to enjoin the defendants from violating Sec. 9(a) (2) of that act, 15 U.S.C.A. § 78i(a) (2). It provides that it shall be unlawful to effect alone or with one or more other persons a series of transactions in any security registered on a national securities exchange, creating actual or apparent active trading in such security, or raising or depressing the price of such security for the purpose of inducing the purchase and sale of such security by others.

The material facts alleged in the complaint and moving affidavits upon which the plaintiff seeks relief are that the defendant Bennett is the president of and interested in the defendant Federal Corporation, Bennett & Company, Inc., and the Red Bank Oil Company; that during one hour on June 12, 1945, Bennett bought 3,800 shares of the common stock of the oil company, a substantial part of all the common stock traded on the New York Curb Exchange, a registered national securities exchange, on that day, on terms which were offered at the time, for the defendant Federal Corporation, at prices varying from 1⅞ to 2; that Bennett & Company, Inc., and its predecessors have owned or been entitled to receive approximately 409,000 shares of the common stock of the oil company; that on or about May 31, 1945, the oil company filed a registration statement signed by Bennett, as chief executive officer, director and president of the oil company, relating to a proposed public offering of approximately 990,000 shares of common stock of the oil company; that the registration statement names Bennett & Company, Inc., as principal underwriter and sets forth that these securities in excess of 400,000 shares are proposed to be offered from time to time to the public by Bennett & Company, Inc., and that 100,000 shares are proposed to be purchased by Bennett & Company, Inc., as underwriter and also to be offered to the public by Bennett & Company, Inc., from time to time, at prices varying in accordance with the price at which the stock sells on the Curb Exchange at the time when the sale is made, estimated to be $2 per share; that these purchases created actual and apparent active trading and raising the market value on said stock from 1¾ to 2; that the oil company had outstanding at the time 947,182 shares, and that out of the 990,793 shares being registered for sale, 459,970 are not to be issued at the present time; that the Bennett interests owned and are to receive a substantial portion of the common stock outstanding and to be outstanding and that the purpose of regis-

tration is to ready the shares for public sale; that the purchase of said 3,800 shares on June 12 was not needed for investment but intended to raise the market price from $1\frac{3}{4}$ to 2, an increase of $100,000 in the market value of the Bennett interests.

In the opposing affidavits Bennett and his attorney set forth that the Federal Corporation is an investment company and has acquired substantial stock in a number of companies, including the Standard Oil Company of New Jersey, Humble Oil Company, Murray Body Corporation and Red Bank Oil Company; that before making the purchases for Federal of any shares of stock of the oil company the defendant Bennett was advised by his counsel that there could be no objection to such purchases if they were made for investment purposes by the Federal Corporation in the usual and ordinary course of business and were made approximately at one time, because otherwise if the stock was purchased in small lots these purchases might appear so continuous that they may conceivably affect the price of the stock on the Curb Exchange, especially in view of the fact that there is a registration statement pending which has not yet become effective; that the stock was purchased and sold many times on many days prior to June 12 at similar prices and that from the 1st of June to and including the 12th of June the stock was selling between $1\frac{7}{8}$ and 2; that it closed at $1\frac{7}{8}$ on the day before Federal Corporation made any purchases and that during that time it never sold lower than $1\frac{7}{8}$ or higher than 2; that thereafter and up to the end of June it reached a high of $3\frac{1}{8}$ but that the Federal Corporation, which could have sold for a profit of approximately $33\frac{1}{3}\%$, did not sell or dispose of a single share so acquired; that the fact that no purchase was made by the Federal Corporation before or after that date is an indication that neither the company nor Bennett was interested in the daily market fluctuations but that it was purchased for an investment and is still retained as an investment; that the registration statement was filed because in the opinion of some of those connected with the Commission it was required in case shares owned by the defendant's interests should be sold to the public.

There is very little dispute, if any, as to the material facts stated other than the conclusion that the purchases were made for the unlawful purpose of rigging the market. The mere fact that purchases were made by largely interested persons while the registration statement was pending is not in itself sufficient evidence of any unlawful purpose. That the 3,800 shares were all bought within an hour, while such registration statement was pending, which registration in itself may have been considered as tending to increase the value of the stock, does not establish that the stock was bought with the intent to create an actual and apparent active trading for the purpose of increasing or depressing the prices so as to induce the purchase or sale by others. See Securities and Exchange Comm. v. Andrews, 1 S.E.C. Jud.Dec. 265, 269. The fact that the prices paid were within the range at which the stock sold for some time, both before and after the purchases, and that none of the stock was bought or sold by any of the defendants since the time of the purchases, tend strongly to show that the purchases were not made for manipulative purposes. See opinion of General Counsel of Commission, Release 3056, October 27, 1941; '41–'44 C.C.H. Dec. 75,214.

The possibility that the filing of the registration statement and extensive purchases would cause a rise in the market price of the stock did not suffice to constitute a violation of the act. The evidence does not establish that either of the defendants contemplates any future violation of the law, for which the act provides adequate redress. See Securities and Exchange Commission v. Otis & Co., D.C., 18 F.Supp. 100; Securities and Exchange Commission v. Federal Compress & Warehouse Co., '41–'44 C.C.H. Dec. 90, 106; Securities and Exchange Commission v. Saphier, District Court, Southern District of New York, 1936; '41–'44 C.C.H. Dec. 90, 107; Securities and Exchange Comm. v. Torr, 2 Cir., 87 F.2d 446.

The motion accordingly is denied.