The **PRUDENTIAL INSURANCE COMPANY OF AMERICA**, Teachers Insurance and Annuity Association of America, State Street Bank and Trust Company, as Master Trustee for the Retirement Plans of Atlantic Richfield Company and Certain of its Subsidiaries, and Manufacturers Hanover Trust Co., as Trustee for the Special Situations Bond Fund, Plaintiffs,

v.

BMC INDUSTRIES, INC., and the First National Bank of Saint Paul, as Agent, Defendants.

No. 85 Civ. 4881 (RWS).

United States District Court, S.D. New York.

Nov. 21, 1985.

See also, D.C., 630 F.Supp. 1298.

White & Case, New York City (Thomas McGanney, of counsel), for plaintiffs.

Cahill Gordon & Reindel, P.C., BMC Industries, Inc., New York City (Charles A. Gilman, Thomas R. Jones and Laurence A. Silverman, of counsel), for defendants.

## OPINION

SWEET, District Judge.

Defendant BMC Industries, Inc. ("BMC") has brought a motion to dismiss the complaint for lack of venue or in the alternative to transfer this action to the United States District Court for the District of Minnesota pursuant to 28 U.S.C. § 1404(a), 1406(a). For the following reasons the motion is denied.

### Prior Proceedings

This is an action brought by plaintiffs, the Prudential Insurance Company of America ("Prudential"), Teachers Insurance and Annuity Association of America ("TIAA"), State Street Bank and Trust Co. ("State Street") and Manufacturers Hanover Trust Company ("Manufacturers") under section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and under principles of common law for rescission of a Note Agreement dated December 13, 1984 (the "Note Agreement") between BMC and each of the plaintiffs. Plaintiffs purchased $30,000,000 of BMC's convertible notes (the "Notes") pursuant to the Note Agreement.

In addition to seeking rescission of the Note Agreement, plaintiffs also requested in their original complaint an injunction to prevent the execution of an amendment to BMC's ongoing credit agreement with The First National Bank of St. Paul (the "St. Paul Bank") and other members of a group of bank lenders. This claim for relief was a response to BMC's declaration to plaintiffs that it had entered into an amendment pursuant to which all of BMC's debt to the banks would become payable immediately upon any suit for rescission by plaintiffs. Before the court reviewed this injunctive request, BMC voluntarily agreed to waive the effectiveness of the amendment until July 1, 1986 and, therefore, St. Paul Bank was dismissed as a defendant in this action without prejudice.

### The Facts

The following facts relevant to venue and transfer are not disputed by the parties. The transaction at issue was initiated in August, 1984 when The First Boston Corporation ("First Boston"), an investment banking company, contacted each of the plaintiffs to inform them of BMC's intention to offer approximately $25,000,000 of convertible notes. Kevin Newman, a vice-president of First Boston based in its New York office, was a significant participant in the transaction, both by furnishing information to the plaintiffs and by assisting in negotiations on behalf of BMC. First Boston acted as BMC's financial advisor in connection with the issuance of the Notes. The BMC client officer at First Boston works at that firm's Chicago, Illinois office.

From August, 1984 through the closing of the transaction on December 13, 1984, the plaintiffs, BMC, and First Boston participated in general meetings and negotiations. One meeting occurred at the offices of BMC in St. Paul, Minnesota. The rest of the meetings leading up to the consummation of the sale appear to have occurred in New York City. One meeting occurred on October 2, 1984 in which BMC provided certain data at issue in the action. Further discussions were held in New York on November 15 and November 30, 1984 and were attended by Paul B. Burke ("Burke"), BMC's vice-president and general counsel. The Note Agreement was also executed in New York on December 13, 1984. One day after closing, Ryal Poppa, the chairman and chief executive officer of BMC, travelled to New York and disclosed additional information. At another meeting in New

York on January 22, 1985, the plaintiffs met with First Boston and BMC representatives and demanded rescission.

### Venue

Venue is proper in this district under section 27 of the Exchange Act, 15 U.S.C. § 78aa (1982). The facts indicate that several meetings between the principals and their agents occurred in New York City and moreover, the transaction was ultimately executed here. Therefore, this court's holding in *Hadron, Inc. v. Vukcevic,* [1982–83] Fed.Sec.L.Rep. (CCH) ¶ 99,101 (S.D.N.Y.1983), which was based on the absence of any activities in New York other than plaintiffs' representation by New York counsel, is inapplicable here.

### Transfer

BMC's alternative motion for a change of venue is made pursuant to 28 U.S.C. §§ 1404(a), 1406(a). Section 1404(a) permits a district court to transfer any civil action to any other district or division where it might have been brought for the convenience of parties and witnesses and in the interest of justice.

■ The plaintiffs' choice of forum must be given substantial weight unless the balance of convenience and the interest of justice weighs heavily in favor of the defendant. *Factors Etc. v. Pro Arts, Inc.,* 579 F.2d 215 (2d Cir.1978), *cert. denied,* 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979). Accordingly, the burden is on the defendant to establish that there should be a change of venue. *City of New York v. General Motors Corp.,* 357 F.Supp. 327, 328 (S.D.N.Y.1973), *see Ross v. American Airlines, Inc.,* 83 Civ. 3718 (S.D.N.Y. Oct. 18, 1983) (requiring a "clear-cut showing"); 15 C. Wright, A. Miller and E. Cooper, Federal Practice and Procedure 244 (1976). The relevant factors are: convenience to the parties and witnesses; the relative ease of access to sources of proof; the availability of process to compel the presence of unwilling witnesses; the practical problems indicating that the case can be tried more expeditiously and inexpensively, and the interests of justice. *Seven Star Shoe Co., Inc. v. Strictly Goodies, Inc.,* 83 Civ. 2904

(S.D.N.Y. March 21, 1984). *See Van Dusen v. Barrack,* 376 U.S. 612, 616, 84 S.Ct. 805, 809, 11 L.Ed.2d 945 (1964); *Schneider v. Sears,* 265 F.Supp. 257, 263 (S.D.N.Y. 1967).

■ An evaluation of the convenience of the parties and witnesses does not provide a clear-cut showing that this case would better be tried in Minnesota. Each of the two opposing sides has amply demonstrated that their employees with knowledge of the transaction and the relevant underlying facts would prefer to appear at a trial located in their home district. Donald Heitzler, a managing director of the Capital Markets Group of the Prudential Investment Corporation, headed the group at Prudential's New Jersey headquarters that participated in the purchase of the BMC notes and resides in New Jersey. Michael Fitzgerald, a director of the same Capital Market Group, attended several of the meetings and participated in negotiations regarding the Note Agreement; he also lives in the metropolitan New York area. Suzanne Walton and Daniel Nigro are a senior vice president and senior securities analyst, respectively, at TIAA's main office in New York City. These two witnesses also attended meetings and are prepared to testify about the Note Agreement transaction. BMC, on the other hand, has submitted the affidavit of Paul Burke who asserts that he and other executives at BMC will be greatly inconvenienced by having to testify in this district. Thus there is a sharp division regarding the convenience of New York as opposed to Minnesota. *Cf. Ethiopian Spice Extraction Share Co. v. Kalamazoo Spice Extraction Co.,* 78 Civ. 4169 (S.D.N.Y. June 11, 1979) (finding that the inconvenience to the plaintiff, a foreign corporation, would be the same in either the New York or Michigan district court).

Perhaps a more important question, therefore, is the availability of process to compel the testimony of non-party witnesses. *See Turner Holdings, Inc. v. Howard Miller Clock Co.,* 83 Civ. 7545 (S.D.N.Y. February 29, 1984). Newman, the First

Boston advisor to BMC in this particular transaction, resides in New York. Charles J. Burns, the former chief financial officer of BMC, resides in the District of Minnesota. Harris Ravine, the former senior vice president, secretary and general counsel for BMC, has retained a job in Colorado, but still maintains a personal residence in Minnesota. Thus, unless and until he changes his personal residence, he presumably would be subject to the process of the district court in Minnesota. Finally, Ryal Poppa, BMC's former president, resides in Colorado and Margaret Auchincloss, BMC's client officer at First Boston, resides in Chicago. While the location of these non-party witnesses weighs slightly in favor of Minnesota as the more appropriate forum, the difference does not rise to a material proportion. *Cf. Turner Holdings, supra* (transferring action upon holding that great majority of potential witnesses resided in Michigan).

In weighing the number and location of potential non-party witnesses, the court has excluded as irrelevant for the present time the location of witnesses for St. Paul Bank. Witnesses from the bank were sought by the plaintiffs for expedited discovery in connection with BMC's credit agreement with the group of banks headed by St. Paul Bank. Since this aspect of the case has been provisionally settled by consent of the parties, it cannot possibly be the focus of this action until after July, 1986.

None of the other considerations associated with the motion to transfer persuade the court that this action should be tried in Minnesota. The documents sought to be discovered by plaintiffs can certainly be reproduced and presented in New York. *See Herbst v. Able,* 278 F.Supp. 664, 667 (S.D.N.Y.1967). In addition, the Note Agreement was executed in New York and contains a governing provision which specifies that New York shall provide the law governing the rights of the parties. Each of these facts suggest that New York law will be more important in this action than will the law of the State of Minnesota and so counsel the maintenance of the action in this forum. *See Turner Holdings, supra.*

The docket conditions in each of the two possible fora do not dictate that the action be transferred in the interests of justice. *See Calavo Growers of California v. Belgium,* 632 F.2d 963, 969 (2d Cir.1980) (Newman, J., concurring).

In sum, BMC has not met its burden of demonstrating that the plaintiffs' choice of forum should be overturned. *See Factors Etc., supra,* 579 F.2d at 218. BMC is a corporation with offices throughout this country and even maintains a presence abroad. Having selected New York as the appropriate place to market its securities and having actively sought the interest of the plaintiffs' through a New York investment banking firm, BMC should not, without a stronger showing than has been made at this time, be permitted to avoid this logical and appropriate forum for resolving the rights of the parties under the allegedly fraudulent Note Agreement.

BMC's motion for a transfer of venue will be denied. Should the litigation change its course to include the St. Paul Bank as a party, or should a bankruptcy action be commenced in Minnesota, leave is granted to review the instant transfer motion.

IT IS SO ORDERED.