**ENTENMANN'S, INC., Plaintiff,**

v.

**KING BEES DISTRIBUTION CO., INC., Michael G. Brenner, John T. King, and William M. Bozeman, Defendants.**

**No. CV 88-1112.**

United States District Court, E.D. New York.

Aug. 23, 1988.

**158**

Kaye, Scholer, Fierman, Hays & Handler by Richard M. Steuer, New York City, for plaintiff.

Piliero & Goldstein by Robert D. Piliero, New York City, for defendants.

WEXLER, District Judge.

Plaintiff Entenmann's, Inc. ("Entenmann's"), a manufacturer of bakery products, brings this diversity action alleging that it is owed over one-half million dollars for goods sold and delivered. Named as defendants are King Bees Distribution Company, Inc., a distributor of bakery products in certain areas of Tennessee ("King Bees") and three of its principles. Presently before the Court is plaintiff's motion for summary judgment and its request for an order enjoining defendants from prosecuting an action initiated against Entenmann's in Federal District Court in Knoxville, Tennessee. In addition to cross-moving for summary judgment, defendants move for dismissal pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure on the ground that this Court lacks personal jurisdiction over defendants. In the alternative, defendants seek a transfer of this action, pursuant to 28 U.S.C. § 1404(a), to the United States District Court for the Eastern District of Tennessee, Northern Division. After a more specific explanation of the relevant facts, the Court will turn to the parties' motions.

## I. BACKGROUND

Defendants John T. King ("King"), Michael G. Brenner ("Brenner"), and William M. Bozeman ("Bozeman") operated a baked goods company called "Wade's Bakers Dozen" ("Wade's") in Knoxville, Tennessee. This enterprise baked and sold its products to retail stores located within Wade's immediate area. Upon inquiry and in an apparent effort to supply its customers with a large line of mass-produced products, defendants contacted Entenmann's in Miami, Florida. Following a visit by an Entenmann's representative from Florida to Knoxville, Wade's began to deal with Entenmann's in Miami by going to Atlanta, Georgia and trucking Entenmann's merchandise to Tennessee.

The parties are in disagreement as to what took place thereafter. According to defendants, they were advised by Entenmann's of Miami that, due to a corporate restructuring of Entenmann's, Wade's should do business with Entenmann's of Northlake, Illinois. According to Entenmann's, suspicions that defendants were acting as wholesalers rather than retailers led to a meeting between Entenmann's employee William Costigan of Northlake, Illinois and defendants. Costigan's affidavit asserts that when Costigan determined that defendants were acting as distributors, Entenmann's management in Bay Shore, New York decided to ship products to defendants from Northlake, Illinois only rather than from Miami, Florida.

Apparently, meetings took place between Entenmann's representatives and the three

individual defendants in Knoxville, Tennessee and these meetings resulted in the parties entering into a distribution agreement dated January 23, 1987 (the "Distribution Agreement"). Defendants assert that King Bees was established for the sole purpose of distributing Entenmann's products pursuant to the Distribution Agreement.

The parties began to do business under the terms of the Distribution Agreement and, despite the fact that payment for merchandise received was to be made every seven days, defendants fell behind. While Costigan claims that he notified King when the payment schedule "deteriorated ... [to] ten weeks," King insists that he and co-defendant Brenner were "astonished" to learn that "Entenmann's had permitted King Bees to run up a debt equal to more than eleven weeks worth of merchandise."

An additional dispute exists between the parties as to a guarantee which the three individual defendants signed in conjunction with the Distribution Agreement. While Entenmann's claims that pursuant to the guarantee the three individuals are liable for the entire debt owed by King Bees, defendants claim that no such personal obligation exists.

In February of 1988, representatives of Entenmann's from Illinois visited King Bees to undertake a review of the situation. At this point, the decision was made to have all of King Bees' customers make payments directly to Entenmann's for the products they purchased. The parties disagree, however, as to their interpretations of what happened next. According to defendants, plaintiff promised to allow defendants to satisfy the debt owed Entenmann's out of the profits made during the next three to five years. Plaintiff claims that no such "rehabilitation agreement" was ever entered into and argues that no such agreement could possibly be valid since the Distribution Agreement required that any modification be in writing.

Needless to say, the business relationship between the parties deteriorated. Entenmann's terminated the King Bees distributorship and commenced this lawsuit.

Approximately eight weeks later, King Bees commenced a lawsuit against Entenmann's in the United States District Court for the District of Tennessee. That lawsuit is based, essentially, on the same facts raised herein and seeks three million dollars in damages.

Plaintiff insists that this is a "straightforward case" based on claims for goods sold and delivered, brought against a party to a contract and three guarantors. Defendants counter with the argument that representatives of the plaintiff falsely and fraudulently misled them and induced them to enter into the Distribution Agreement, "lull[ing] defendants into complacency" while destroying their business.

## II. TRANSFER

As an initial matter, this Court will consider whether this case should be transferred. Since the Court has the power to transfer the case regardless of the existence of personal jurisdiction over the defendants, the Court need not decide the personal jurisdiction issue. *See Goldlawr v. Heiman,* 369 U.S. 463, 466, 82 S.Ct. 913, 915, 8 L.Ed.2d 39 (1962); *Corke v. Sameiet M.S. Song of Norway,* 572 F.2d 77, 80 (2d Cir.1978); *Torres v. Torres,* 603 F.Supp. 440, 442 (E.D.N.Y.1985).

Under 28 U.S.C. § 1404(a) this Court must initially determine whether this action could have properly been brought in the district to which transfer is sought. 28 U.S.C. § 1404(a). Here, the individual and corporate defendants are all residents and citizens of the State of Tennessee and the plaintiff corporation does business in that state. In addition, the Distribution Agreement specifically states that any action or proceeding initiated by either party "may be commenced in any county or federal judicial district wherein any party hereto does business." In view of these facts, the Court concludes that the threshold requirement of Section 1404(a) is met and turns to consider whether transfer is warranted.

In addition to showing that the action could have been commenced in the proposed transferee district, a party seek-

ing transfer must make a "clear showing" that the transferee district is more convenient and that the interests of justice would be better served by the transfer. *St. Cyr v. Greyhound Lines, Inc.*, 486 F.Supp. 724, 727 (E.D.N.Y.1980); *Heyco, Inc. v. Heyman*, 636 F.Supp. 1545, 1548 (S.D.N.Y. 1986). Factors that this Court must consider when determining whether the requisite showing has been made include: (1) the convenience of the parties; (2) the convenience of material witnesses; (3) the availability of process to compel the presence of unwilling witnesses; (4) the cost of obtaining willing witnesses; (5) the relative ease of access to sources of proof; (6) where the events in issue took place; (7) the practical problems indicating where the case can be tried more expeditiously and inexpensively; and (8) the interests of justice in general. *See, e.g., Cain v. New York State Board of Elections*, 630 F.Supp. 221, 226 (E.D.N.Y. 1986); *St. Cyr*, 486 F.Supp. at 727; *Kreisner v. Hilton Hotel Corp.*, 468 F.Supp. 176, 177 (E.D.N.Y.1979).

In support of their motions, defendants state that: (1) the chosen forum has little or no relationship to the facts underlying the dispute; (2) several non-party witnesses are all located in or nearer to Knoxville, Tennessee than to New York; (3) records of the defendant corporation and other persons are located in Knoxville, and (4) despite the application of New York law to the contractual dispute concerning the Distribution Agreement, Tennesse law applies to defendants' claims against plaintiff.

Plaintiff, pointing to the fact that summary judgment motions are pending, argues that the convenience of witnesses is "not a factor." Furthermore, plaintiff contends that defendants can demonstrate no financial hardship with respect to litigating this case in New York and that therefore the present lawsuit should remain in New York and defendants should be enjoined from continuing their Tennessee suit.

## A. Convenience of Material Witnesses

█ At first blush, there appears to be merit to plaintiff's argument that the pendency of cross-motions for summary judg-

ment renders the convenience of material witnesses an irrelevant factor. Without passing on the merits of the summary judgment motions the Court notes that open questions of material fact will probably preclude the granting of either party's motion. For example, sharp factual disputes exist as to the nature of the guarantee and whether any "rehabilitation agreement" was ever reached. Since it is unlikely that this litigation will terminate with the granting of a summary judgment motion, the Court will turn to consider whether the convenience of material witnesses weighs in favor of or against transfer of this litigation.

It is well established that the convenience of non-party witnesses is a consideration to be given some weight in determining a section 1404(a) motion to transfer. *Kreisner v. Hilton Hotel Corp.*, 468 F.Supp. 176 (E.D.N.Y.1979). Indeed, some courts have suggested that this factor is the "most significant" among the issues to be addressed in determining transfer motions. *Saminsky v. Occidental Petroleum Corp.*, 373 F.Supp. 257, 259 (S.D.N.Y.1974). Here, defendants have identified several non-party fact witnesses, all of whom are in or closer to Knoxville, Tennessee than to New York.

Rather than refuting defendants' contentions, plaintiff, relying on *Car–Freshner Corp. v. Auto Aid Mfg. Corp.*, 438 F.Supp. 82, 85 (S.D.N.Y.1977), asserts that "courts generally give the convenience of witnesses 'little weight, if any.'" (Plaintiff's Memorandum in Opposition to Defendants' Motions at 9.) A close reading of *Car–Freshner* and the cases upon which it relies reveals, however, that little weight is given to this factor only insofar as it applies to the convenience of *expert* witnesses. *See Wibau, Westdeutsche Industrie Und Strassenbaumachinengesellschaft v. American Hoist & Derrick Co.*, 293 F.Supp. 273, 275 (S.D.N.Y.1968); *Wilson v. Ohio River Co.*, 234 F.Supp. 283, 285 (W.D.Pa.1964), *aff'd*, 375 F.2d 775 (4th Cir.1967). This legal position has no application where, as here, the issue is the convenience of *fact* witnesses.

Since plaintiff has neither refuted the legal or factual premises referred to above, the Court concludes that the convenience of witnesses is a consideration that weighs in favor of transfer. *See, e.g., Designs by Glory Ltd. v. Manhattan Creative Jewelers Inc.,* 657 F.Supp. 1257, 1259–60 (S.D.N.Y.1987) (transfer warranted where defendant showed, among other things, that five non-party witnesses were located in transferee district).

### B. *Location of the Underlying Facts*

Defendants argue that all the operative facts underlying the parties' dispute occurred in Knoxville, Tennessee and not in Entenmann's headquarters in Bay Shore, New York. It is clear that defendants signed the Distribution Agreement in Knoxville and that most of the events leading up to this agreement took place either in Tennessee or in Chicago. Although the Distribution Agreement identifies Entenmann's management as being *located* in Bay Shore, New York, it does not appear that any of the defendants ever travelled there with respect to the business relationship among the parties. On the other hand, Entenmann's representatives were present in Tennessee when negotiating the business arrangement. Additionally, the Distribution Agreement itself served to make King Bees a distributor of Entenmann's products primarily in Tennessee. In light of these facts the Court finds that Tennessee has a "much closer nexus to the transactions at issue than does New York," *Connors v. Lexington Ins. Co.,* 666 F.Supp. 434, 455 (E.D.N.Y.1987), and holds that this factor weighs in favor of transfer. *See also Mobile Video Serv. v. Nat. Ass'n. of Broadcast,* 574 F.Supp. 668, 670 (S.D.N.Y.1983)

The fact that New York law applies to the interpretation of the Distribution Agreement does not necessarily support a denial of the transfer motion. Although such law selection clauses are considered in connection with transfer motions, they are granted little weight in transfer motions where the governing law "presents no complex legal questions and has not been shown to be unclear, unsettled, or diffi-

cult." *National Patent Development Corp. v. American Hospital Supply,* 616 F.Supp. 114, 119 (S.D.N.Y.1984).

### C. *Location of Documents*

Defendants suggest that although Entenmann's in Bay Shore, New York may have copies of relevant documents, Entenmann's in Northlake, Illinois must also be the location of these documents because, defendants contend, the "principal spokesman" on credit matters during the parties' business relationship was an Entenmann's employee stationed in Illinois. While the fact that copies of certain documents may exist in Illinois does not persuade the Court that Tennessee is a more appropriate forum than New York, the fact that the bulk of defendants records are located in Knoxville, Tennessee is entitled to some weight. Accordingly, the Court concludes that the existence of defendants' records in Tennessee militates in favor of a transfer. *See, e.g., Heyco, Inc. v. Heyman,* 636 F.Supp. 1545, 1549–50 (S.D.N.Y.1986).

### D. *Interests of Justice*

As noted above, a court may consider the interests of justice in determining a motion to transfer. *Cain,* 630 F.Supp. at 226; *St. Cyr,* 486 F.Supp. at 727. This factor is "broad enough to cover the particular circumstances in each case, which in sum indicate that the administration of justice will be advanced by the transfer." *Schneider v. Sears,* 265 F.Supp. 257, 265 (S.D.N.Y.1967). Defendant King's affidavit states that defendants "have their backs to the wall financially," and although plaintiff disputes this contention, there is no suggestion by either party that litigating this lawsuit in Tennessee would be prohibitively expensive for the plaintiff. Thus, the Court concludes that the interests of justice would be served by transferring this case to the District Court for the District of Tennessee.

### III. CONCLUSION

■ Upon a consideration of the applicable criteria and bearing in mind that de-

fendant bears the burden of showing that transfer is appropriate, the Court holds that the balance in this case tilts in favor of transfer. Accordingly, defendants' motion to transfer is granted. The Clerk of the Court is directed to forward all papers and files in this lawsuit to the Clerk of the United States District Court, Eastern District of Tennessee, Northern Division.

SO ORDERED.